Comstock, J.
One Saxton, who is the common source of title, on the 1st of October, 1837, assigned all his real estate to Crosby and Crane for the benefit of his creditors. Webb and Douglass afterwards, on the 4th of November, 1837, recovered a judgment against him, which was the first in the order of time. On the 28th of September, 1838, having had their execution returned unsatisfied, they filed their bill in Chancery against the assignor and assignees for the purpose of setting aside the assignment, on the ground that it was made in fraud of creditors. On the 1st of November, in the same year, a decree was pronounced in that suit, declaring the assignment fraudulent and void as to creditors, and directing the assignor to convey the assigned estate to a receiver. He accordingly conveyed to a receiver on the 5th of January, 1839, who subsequently, on the 7th of May, 1840, sold and conveyed the premises in question to one White, under whom the defendant is in possession as tenant. The plaintiff claims title to the same premises by virtue of a sheriff’s deed, given in pursuance of a sale made May 30,1840, under judgment against the same debtor, recovered by one Adams before the filing of that bill, but after the rendition of the judgment above mentioned in favor of Webb and Douglass, which was the foundation of the suit in Chancery. Adams was not a party to the bill.
The facts, as thus far stated, present a question of consider■able importance as to the effect upon the liens of other judgment creditors, where the oldest one proceeds in equity ■to set aside a prior fraudulent conveyance or assignment, and not only obtains a decree pronouncing it fraudulent and void, but has a receiver appointed and, through the receiver, has the real estate sold for the satisfaction of his debt. On the part of the defendant it is claimed that the purchaser from the receiver acquires a title free from the liens which had attached in favor of junior creditors, as well before as after the filing of the bill: a doctrine which, if sound, will give to a bill in equity, in such cases, and to the proceedings thereon, if conducted to a decree and a receiver’s sale, all the effect upon -subsequent liens -which a statutory sale by the sheriff under *373 a judgment can have. A sheriff’s sale and conveyance vest in the grantee all the right and title which the debtor had in the land at the time when the judgment first attached as a lien, free from all later incumbrances and unaffected by any subsequent conveyances or acts. These are consequences which flow from the nature of the lien as declared by the statute, and from the provisions of law concerning the execution and sale, and declaring the effect of the conveyance to be finally given. But the sale is not conclusive before the expiration of a year, during which the debtor, his heirs and grantees, may redeem; nor can the deed be given until three additional months have elapsed, during which other judgment creditors and mortgagees may, in the manner provided, acquire the interest of the purchaser at the sale. (2 R. S., 370, § 45, et seq.)
If it be determined that a receiver’s sale, under proceedings in Chancery after a fraudulent conveyance is set aside by the decree, is attended with the same results, the obvious effect in the first place is to cut off the right of the debtor to redeem. This right is secured to him as the judgment debtor by the terms of the statute, notwithstanding he may have parted with all his interest in the land by a prior fraudulent or subsequent honest conveyance. (2 R. S., 370, §§ 45, 46.) A consequence more material to the present purpose is, that other creditors, by judgment or decree, whose debts are also liens if the debtor’s prior conveyance is tainted with fraud, are also deprived of the right secured by law to improve their condition by acquiring the interest and taking the situation of the purchaser at the sheriff’s sale. Indeed, if a court of equity can direct a peremptory sale, by its receiver, in cases of this kind, and if the effect of that sale be as claimed, the whole policy of our laws in respect to liens by judgment, and sales to enforce the same, would seem to be subverted.
Such, we are satisfied, is not the nature or effect of proceedings in equity in cases of this description. The appropriate object of a bill in Chancery, so far as it relates to lands in which the debtor has a legal estate subject to the statutory lien of judgments against him, is fully obtained when a dfecree *374 is pronounced clearing away the fraudulent obstruction to the ordinary and legal remedy by execution. IT the court, however, proceeds further, and directs first an assignment by the debtor to a receiver, and then a sale by the latter for the purpose of satisfying the debt which is the foundation of the suit, the purchaser will, undoubtedly, acquire a title. (Chautauque Co. Bank v. White, 2 Seld., 236.) I do not question the power of the court, acting upon the person of the debtor, to compel him to assign his estate to a receiver for the payment of the debt. The fraudulent conveyance being annulled by the decree, the receiver, under an assignment to him, takes the title, which he can convey to a purchaser. But the title of the receiver, and of the purchaser from him, rests upon the debtor’s own conveyance, made under the-direction of the court, and has no relation to the judgment. When the creditor takes this course, instead of falling back upon his legal remedy, he abandons the lien of his judgment and seeks a satisfaction of his debt out of the debtor’s property generally. The personal estate becomes vested in the receiver from the time and by virtue of his appointment; the real estate only by virtue of a -conveyance to him which the court has power to compel: and in this way the satisfaction is worked out. If several judgment creditors are thus proceeding in equity, either in one or in several suits, the same receiver is appointed for the benefit of all of them. If real estate on which their judgments are liens is sold, the proceeds will be shared amongst them according to their priorities. But all who thus proceed, make their election between the two modes of procuring payment of their debts, one by enforcing specifically and in the mode provided by law the liens of their judgments, the other by procuring an estate charged with those liens to be sold in another manner and by another instrumentality for the payment of the same debts. A debtor’s conveyance of his real estate to a receiver, although it may be compulsory, is in its nature simply and purely the creation of a trust for the payment of the debts on which the proceedings in equity are founded. The receiver is the trustee, and discharges his duty under the direction of the *375 court. The creditors at whose instance the trust is created, for whose benefit the trust fund is sold, and who take its proceeds, most certainly can never afterwards seize upon and sell the same estate or fund by virtue of a prior legal lien. A pretension to any such right on their part would be repelled by the superior right of the purchaser to enjoy the estate free from the incumbrance of debts to satisfy which it had been sold.
But no creditor having a statutory lien by judgment can be compelled to take the equitable remedy. He may, if he prefer, stand upon his lien and the means which the law has given him of enforcing it. If his debtor has made a prior fraudulent conveyance, he may, nevertheless, sell upon his execution, and the purchaser will have the right and will take the risk of impeaching such conveyance. If his judgment has been recovered before.other creditors have instituted proceedings in equity, nothing in the course or in the result of those proceedings can affect his rights. A lis pendens filed with the bill, or actual notice of the suit, may perhaps subject all judgments afterwards recovered to any decree which shall be made, and render them subordinate to a receiver’s sale. The title derived from the receiver rests, as we have seen, on the conveyance of the debtor, which the court compels him to make, and it must, therefore, in the absence of actual or constructive notice of the suit, be a title subject to all liens existing at the time of that conveyance in favor of persons who are in no way connected with the proceedings; and in no case can such title relate to any period of time anterior to the filing of the bill so as to affect the legal rights of persons who do not voluntarily waive them by uniting in that remedy. To determine otherwise, would be to convert a creditor’s suit into a species of execution on the judgment for the specific enforcement of the lien; so that a title, confessedly based on the debtor’s own conveyance to an officer of the court, may relate back to the period when the judgment became a lien. For this conclusion there is no principle, and no precedent can be found in the books.
*376 We have been referred to cases showing that any attempt, by a person having an outstanding right or title, to disturb the possession óf a receiver, is a contempt' of the Court of Chancery. All the doctrine on this subject which is pertinent to the present question may be seen, by referring to the case of Angel v. Smith (9 Ves., 335). The cause in Chancery coming on for further directions, it appeared that an ejectment had been brought, without leave of the. court, for lands in the possession of its receiver. The • Lord Chancellor observed that the practice was to ask leave, and he “ cautioned the solicitor that he would proceed at his peril.” Mr. Eichards. then mentioned an instance in which the party was very nearly committed by- Lord Thurlow. In consequence of these intimations, a motion was made the next day for leave to try the ejectment, and after a great deal of discussion leave was given. In all the discussion no doubt was suggested that a prior legal title would prevail against a receiver's possession. The questions considered were, whether leave must be asked and whether, in that particular case, it should be granted. If not asked, it was considered that the party might be in contempt, because the Court of Chancery thought itself competent to examine the-title,, and would permit the party claiming to be examined pro interesse suo. The Lord Chancellor said “it is clearly a contempt of this court to disturb sequestrators “consider the consequence. How are sequestrators to defend their possession against an ejectment?" The same rules, he thought, applied to receivers whose possession, he said, might be disturbed whenever there was a legal right; but the court would examine that right before granting leave, to the party claiming it, to proceed. How, in this practice of the Court of Chancery, I see nothing even to suggest a doubt of the validity of a title acquired by sale under a judgment, which is a legal lien upon the land sold prior and paramount -to the title or possession of a receiver. It may be that the creditor should ask leave of the Court of Chancery before he proceeds to sell, or that the purchaser acquiring the title should make a like application before he brings his ejectment. If, however, he *377 foils to do so, the question is merely whether the court will consider him in contempt and punish him accordingly. The sale itself is but the assertion of a legal right, and it cannot be illegal and void-on the ground that the leave of an equitable tribunal is not first asked and obtained. It may be that the case of Wiswall v. Sampson, in the Supreme Court of the United States (14 How., 52), goes to the extent of laying down a different doctrine. If so, we are constrained to say that we cannot follow that decision.
The result is, that White, by the decree in the Chancery suit annulling the debtor’s fraudulent assignment and by the receiver’s sale and conveyance, acquired a title to the premises in question, subject to the hen of judgments docketed prior to the commencement of that suit in favor of persons not parties thereto. On one of those judgments the sheriff sold, and the plaintiffs have the conveyance under that Sale. They are, therefore, entitled to recover the premises, so far as we have yet examined the case.
It has been argued, however, that on the trial the plaintiffs did_ not support their title by proving that the debtor’s conveyance to assignees, prior to all the judgments, was fraudulent. That proof was made by the defendant. The plaintiffs having shown the judgment and their title under the sheriff’s sale, were prima facie entitled to recover. The defendant then proved his title under the proceedings and decree in Chancery at the suit of Webb and Douglass, and under the assignment to the receiver and the sale by him. The decree adjudged and determined that the prior assignment was fraudulent and void; and the receiver’s conveyance to White recited the suit in Chancery and the decree. The defendant’s title depended, therefore, on the fact that the assignment had been made in fraud of creditors, and having thus proved the fact in his own favor, he could not allege that it was not true in respect to, the plaintiffs. The recitals in the deed, under which he held, estopped him from making that allegation. This, I think, is a plain proposition; and the law was consid *378 ered to be so by the former Supreme Court, when the case was before it some twelve years ago. (4 Denio, 480.)
Proceeding now to questions of a different character, it appears that the three judgments first recovered against Sax-ton, the debtor, were these: (1) The one in favor of Webb and Douglass, in which the bill in Chancery was filed. (2) One in favor of Porter, docketed May 7, 1838. (3) One in favor of Adams, docketed July 28, 1838 ; all being prior to the commencement of the Chancery suit. The sheriff’s sale which has been mentioned, was on the Adams’ judgment, and White was the purchaser as before stated. Before the expiration of fifteen months, one Chauncéy Tucker procured an assignment of the Porter judgment, and then as assignee of that judgment took the necessary steps to redeem or acquire the interest of White, as purchaser at the sheriff’s sale. Tucker then assigned his interest to the plaintiff’s bank, which received the sheriff’s deed, that being the title under which they claim to recover. At the time White bid off the premises at the sheriff’s sale (May 30, 1840), he had acquired the title and was the owner of the premises under the receiver’s sale and conveyance, as already shown. Upon these facts the question is presented, whether White, being the owner, subject, as we have seen, to the lien of the Adams and Porter judgments, is to be regarded as a purchaser at the sheriff’s sale; so that in that capacity he could take the deed and acquire an older title under the Adams judgment, or whether his bid and the payment thereof are to be regarded as so much money paid by him in extinguishment of a lien which, as owner of the land, he had a right to pay off and discharge. If it is to be regarded.as a sale with the usual incidents, then Tucker could acquire the interest of the purchaser as redeeming judgment creditor, and the bank, as his assignee, could receive a valid and effectual conveyance from the sheriff. If the bid of White is to be considered a simple payment, or if his interest as purchaser is to be deemed merged in his title the moment he acquired it, then the plaintiffs have no ground to stand upon, and the defendant’s title through the receiver must prevail.
*379 We see no reason, thus far,. to doubt the efficacy of the sheriff’s sale or the validity of the conveyance to the plaintiffs in pursuance thereof. We discover no difficulty or incongruity in conceding to the owner of the fee, not being himself the judgment debtor, the right to become a purchaser under a judgment which is a lien upon his land. He purchases, it is true, in a certain sense, his own land, but the sale is under a charge which is an incumbrance senior to his title, and he ought to enjoy the right of attempting in this manner to improve his condition; especially if there be other liens outstanding which he is under no obligation to pay. The true difficulty, if there be any, would seem to arise out of some of the analogies of the law of merger. But we think that a merger of the special interest acquired by purchase at the sheriff’s sale does' not occur in such a case. That interest, it is true, during twelve months from the sale, is but a specific lien for the sum bid, in the sense that it is defeasible on a redemption within that time. But, in another sense, it is an inchoate title paramount to the one already possessed by the purchaser, and ripening, by lapse of time merely, into an absolute estate. There is some difficulty, therefore, in calling it a lesser estate liable to sink into the greater. In the sense last suggested it is a higher estate, defeasible on a condition subsequent, but which, if unredeemed from within a prescribed period, will absorb and subvert the other. It is, moreover, to be observed, that a sale being made under a judgment, certain incidents and rights attach in favor of other parties which are lost if the interest of the purchaser is deemed to merge in his title. The statute provides that other creditors having liens may acquire the interest by proceeding in the manner provided. Our conclusion is, that Mr. White took and held such an interest by his purchase under the Adams judgment, that Tucker could acquire it as a creditor having a lien under the judgment in favor of Porter.
Tucker, after the lapse of fifteen months from the time of the sale, assigned all his rights to the plaintiffs by a written instrument under seal, and expressed in general terms to be *380 “ for value received.” There is no other proof in the case of the consideration upon which that assignment was made. The plaintiffs are a banking corporation having a special charter, and the question arises whether that purchase from Tucker is to be regarded presumptively as made within the power conferred upon them of acquiring real estate. I say the purchase from Tucker, because when he made the transfer to the plaintiffs the sheriff’s sale had matured, and the conveyance was in judgment of law absolutely due. The conveyance itself was a formal act remaining to be done which the plaintiffs were entitled, as of course, to have performed in their favor, provided their purchase of Tucker’s right was an authorized and valid transaction. The question is, therefore, precisely the same as it would be if the bank had received a formal conveyance of real estate from any other party, the consideration clause being expressed in the words “for value received,” without any other proof of the circumstances or of the consideration to bring the purchase within, or to place it without, the powers of the corporation.
The plaintiffs’ bank was authorized by its charter to purchase, hold and convey real estate as follows: 1. Such as should be necessary for its immediate accommodation in the convenient transaction of its business. 2. Such as should be mortgaged to it as security for loans, &c. 3. Such as should be conveyed to it in satisfaction of debts previously contracted in the course of its dealings. 4. Such as it should purchase at sales under judgments, decrees or mortgages held by it. (Laws of 1831, ch. 181.) In this case the purchase from Tucker was not under any judgment, decree or mortgage. His title, as we have seen, had been derived from a sale under a judgment. But the transaction between him and the plaintiffs was not of that nature. Their purchase from him was of the same character as though he had acquired title in any other mode. They were strangers to the sheriff’s sale although they took the deed by the authority of their immediate grantor or assignor. It follows that their right to take and hold the real estate in question can only be maintained on the presumption that it *381 was necessary, in the convenient transaction of their business, or that it was taken in satisfaction of a debt previously contracted. The premises were a small lot of land in the village of Fredonia. I find no proof in the case showing whether the lot was or was not wanted by the plaintiffs for a banking-house, or whether the transfer from Tucker was or was not taken in satisfaction of a debt due from him. In respect to the consideration, the words “ for value received,” contained in that transfer, may be referred with equal propriety to a present value paid down, or to a debt previously existing, in satisfaction of which the assignment was made. The generality of the expression obviously may include value of any description. Quite consistently, therefore, with what we know of the transaction, the bank may have acted within its powers, or it may have exceeded those powers and violated its organic law.
The dealings of a corporation, which on their face or according to their apparent import, are within its charter are not to be regarded as illegal or unauthorized without some evidence tending to show that they are of such- a character. In the absence of proof there is no legal presumption that the law has been violated. On the contrary, these artificial bodies, like natural persons, are entitled to the benefit of the rule which imputes innocence rather than wrong to the conduct of men. A different doctrine would require a corporation, even in many of its ordinary transactions, to show that it had not transcended the limits of its charter. Such a rule, I am confident, has never been laid down; and its policy may well be denied when we consider how much of the business of the community is carried on by associated capital, and how many titles may be endangered if mere presumptions are allowed against the lawfulness of such dealings. A corporation having no general authority to lend money and discount notes may, nevertheless, be the holder of a promissory note and attempt to enforce it. In such a case it will be presumed that the note was taken for a debt contracted in the course of some lawful dealing. (The New York Firemen's Ins. Co. v. Sturges, *382 2 Cow., 664.) In Safford v. Wyckoff (4 Hill, 442), the action was against a banking association upon a draft or bill of exchange. Chancellor Walworth, while dissenting on another ground from the judgment of the Court of Errors in favor of the plaintiffs’ right to recover, observed: “Where a corporation is authorized to give a negotiable security for any purpose, and there is nothing to show for what the particular security was given, if there is nothing on the face of the instrument itself to create a suspicion that it was issued for an illegal object, the court will presume that it was given for a legitimate purpose rather that for one which was unauthorized and illegal.” In The Farmers' Loan and Trust Company v. Perry (3 Sand. Ch. R., 389), Same v. Clowes, (3 Comst., 470), the bill was filed to foreclose a mortgage given by the defendant to the plaintiffs. The plaintiffs, as a corporation, had no general authority to make loans and invest their capital on bond and mortgage, but it could execute trusts, and as incidental to that power, could invest trust funds in securities of that nature. It was held by Assistant Vice-Chancellor Sand-ford and by this court, on appeal, that where a loan- by such a corporation was contested by the borrower on the ground of a want of power to make it, it rested on him tO' show affirmatively that the loan was not made in the proper exercise of the powers expressly granted.
I can see no reason why the principle of these authorities should not be applied to the question, under consideration. The plaintiffs’ bank had, it is true, no general authority to deal in real estate, but it could take and hold lands for specified purposes and for specified considerations. The terms of the conveyance to them are consistent with the powers thus granted. The presumption is in favor of their title, because there is nothing to impeach it; and this presumption rises into greater importance and value when we consider that if the opposite one be allowed it may overthrow titles of this nature transmitted to other hands, and when the lapse of time may have impaired or destroyed the means of sustaining them.
One or two other points require only a brief consideration.
*383 The plaintiffs were themselves creditors, of Saxton, and it appears (so I assume, for argument’s sake) that they, as preferred creditors under the fraudulent assignment,, received from, the assignees certain payments on their debt in the year 1838. On this- ground it has been claimed that they cannot assert their title now in question, which is hostile to that assignment. To this, it is a sufficient answer that the plaintiffs hold simply as purchasers from Tucker, whose title derived in the manner already stated,, was affected by no estoppel or consideration of this nature..
It has also been claimed that the adjudication in the equity suit of these plaintiffs against White, the defendant’s landlord, reported in 2 Selden, 236, is a bar to the present action. But it appears that the subject of litigation in that suit did not embrace the premises- now in question. The plaintiffs claimed other lands, to which they could not be entitled unless two judgments recovered by them against Saxton became liens thereon. But those judgments were recovered two days after Saxton assigned, as above stated, to the receiver, and the point determined was, that the assignment transferred the title to the receiver, so that those judgments never were liens. Upon these facts, it is obvious that the decision and decree can have no influence upon this case.
It appears that White, for the purpose of preventing Tucker from using the Porter judgment to redeem or acquire his interest as purchaser at the sheriff’s sale, on the 26th of August, 1851, paid to the attorney, by whom that judgment had been recovered, the amount due thereon. White, as owner of the land under the receiver’s sale, had undoubtedly a right to pay off and discharge all liens which encumbered it. The claim of a judgment creditor to use his judgment as the foundation of the proceeding to redeem from a sale by the sheriff, is clearly subordinate to the right of the debtor or of the owner of the estate to disencumber it by paying the judgment. But the payment made to the attorney was unauthorized, more than two years having elapsed since the recovery of the judgment, and it has not been pretended that the lien was dis *384 charged by that payment. It seems also that the attorney offered to pay the money over to Tucker, as assignee of the judgment, before the latter took the steps to redeem. But Tucker refused to take the money, insisting that the attorney had received it without authority. This offer could have no effect as a tender, because it was not made by the authority of White; the latter left no instructions with the attorney to tender the money to Tucker. It becomes unnecessary, therefore, to determine whether a tender properly made will discharge the lien of a judgment. It seems, however, to be held, both by the late Supreme Court and Court of Errors, that such is not the effect of mere tender. (5 Cow., 248; 9 id., 641.)
We are of opinion that the judgment of the Supreme Court-must be reversed, and that judgment must be rendered for the plaintiffs on the case made for the opinion of that court.
Johnson, Ch. J., Denio, Strong and Grover, Js., concurred in this opinion. Selden, J., took no part in the decision. Allen and Gray, Js., were for affirmance, on the ground that it was not shown and could not be presumed that the plaintiff acquired Tucker’s title under either of the clauses of its charter authorizing the purchase of real estate.
Judgment reversed, and judgment for the plaintiff ordered.