## PEOPLE v. WARREN.

(Superior Court of Buffalo, General Term. July 30, 1895.)

1. CONSTITUTIONAL LAW—RESTRICTING EMPLOYMENT OF ALIENS.

Laws 1870, c. 385, § 2, as amended by Laws 1894, c. 622, making it a crime for a contractor with a municipal corporation for the construction of public works to employ an alien as a laborer on such works, violates Const. art. 1, § 1, providing that no citizen shall be deprived of any of his rights or privileges unless by the law of the land or the judgment of .his peers, and article 1, § 6, which provides that no person shall be deprived of liberty or property without due process of law, and also Const. U. S. art. 14, § 1, forbidding any state to make a law which shall abridge the privileges or immunities of citizens of the United States or to deprive any person of liberty or property without due process of law.

2. TREATIES—EMPLOYMENT OF ALIENS.

Such statute also violates the treaty between the United States and the king of Italy, providing that resident Italians in the United States shall enjoy the same rights and privileges as are secured to our own citizens.

Appeal from criminal term.

Henry J. Warren was convicted of violating Laws 1870, c. 385, § 2, as amended by Laws 1894, c. 622, which makes it a crime for a contractor with a municipal corporation for the construction of public works to employ an alien as a laborer on such work, and from the judgment of conviction he appeals.   Reversed.

Argued before TITUS, C. J., and WHITE, J.

Frank R. Perkins and John G. Milburn, for appellant.
James L. Quackenbush, for the People.

WHITE, J.   The Barber Asphalt Paving Company is a West Virginia corporation engaged in the business of paving streets in the cities of this state under contracts with the municipal authorities. In June, 1894, the paving company entered into a contract with the city of Buffalo to pave Kensington avenue, a public street in said city.   The defendant was the superintendent of the company, and as such hired and discharged its laborers on that work.   During the progress of the work Warren employed an alien Italian as a laborer, and for that he has been indicted, tried, and convicted.   No question is made as to the defendant's liability, although he acted solely as the agent and servant of the paving company in employing the alien.

The appellant contends—First, that the facts stated in the indictment do not constitute a crime; second, that the statute under which he is adjudged to be a criminal is repugnant to our state and national constitutions, and to the treaty between the United States and the king of Italy.

Section 1 of article 1 of our state constitution provides that no member of this state shall be deprived of any of the rights or privileges secured to any citizen thereof unless by the law of the land or the judgment of his peers.   Section 6 of article 1 provides that no person shall be deprived of liberty or property without due process of law.   Article 5 of amendments to the federal constitution provides that no person shall be deprived of liberty or property without due process of law, and section 1 of article 15 provides that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, and that no state shall deprive any person of liberty or property without due process of law.   By article 3 of the treaty with Italy it is provided, in substance, that resident Italians in the United States shall enjoy the same rights and privileges in respect to their person and property as are secured to our own citizens.

The only way by which a member of the state, whether citizen or alien, can be deprived of the rights and privileges thus secured to him is by due process of law,—namely, a proceeding for that purpose conducted in accordance with the forms and methods, and by the means prescribed, for the enforcement of law.   The relation of the paving company to the city of Buffalo was that of an independent contractor, and while engaged in the transaction of its business in this state it is entitled to the same protection and enjoys the

same liberty, rights, and privileges as individual members of the state. Santa Clara Co. v. Southern Pac. R. Co., 118 U. S. 394, 6 Sup. Ct. 1132. Personal liberty—that is, the right, among others, to make contracts to labor for others and to employ others to labor —is secured by constitutional law to all members of this state, and the right is inalienable. Greenh. Pub. Pol. rule 303; In re Baker, 29 How. Prac. 485.

It will not be profitable, as it seems to me, to argue at length the foregoing propositions of law. If, however, authorities are deemed necessary, see dissenting opinion in the case of People v. Beck (Super. Buff.) 30 N. Y. Supp. 473, and cases there cited. Indeed, the respondent's counsel does not dispute that such is the law. His contention is that the statute in question does not in any way affect or relate to the right of pursuit, but that it simply prescribes rules for the management, or "regulation," as he puts it, of its use of its own property by the state; and he concedes that it is the only theory upon which the validity of the statute can be sustained. His argument is that, as Kensington avenue, in Buffalo, is a public street, it is owned by the city; that as the city is a political subdivision of and a municipal corporation within the state, the ownership of Kensington avenue is in the state; and as the Italian worked on the pavement being constructed in Kensington avenue, he was in fact working for the state, and the state had the same absolute right to say who should or should not work on that pavement that Warren would have had if he had been doing private work for an individual member of the state,—in other words, that the state had the same right to designate what laborers the paving company should employ and refuse employment to, as it, the state, would have had if it were doing the work directly through its agents and servants.

The position thus assumed by the people is novel, and not altogether lacking in plausibility. It is undoubtedly true that, if the state engages in the construction of public works, it may employ and refuse employment to whom it will. It can do that in precisely the same way and to the same extent that an individual member of the state may exercise the same right in reference to his private and individual affairs. The right is the same in either case. It is at this point, as it seems to me, that the respondents fall into error. The contention is, as we have seen, that the state owns the street, and that, therefore, notwithstanding the pavement in it is being constructed under a contract between the municipality and an individual member of the state, the act of employing laborers is one of dominion over and regulation of its own property by the state. The statement of the case carries with it a complete destruction of the theory upon which the claim is made. That the state surrenders its public and governmental functions, and stands on an equal footing with an independent contractor with it, as to such work as that in question here, and that, as a state, it exercises no dominion over the property or control over the employment of laborers upon the work being done, is well stated by Dillon, in his work on Municipal Corporations, as follows:

"Each one of the United States in its organized political capacity, although it is not in the proper sense of the term a corporation, yet it has many of the essential faculties of a corporation: * * * Private rights, the power to sue. and the like. * * * Like corporations, * * * a state can make contracts, * * * maintain actions to enforce its rights, and redress its injuries. While the power to contract is a necessary constituent of the sovereignty of a state, when it enters into a contract with a private individual it relinquishes its sovereign character by such transaction, and, as a general rule, can claim no exemption from the rules of law applicable to the contracts of private parties under like circumstances. Delafield v. Illinois, 2 Hill, 159; Indiana v. Woram, 6 Hill, 33; Lloyd v. New York, 5 N. Y. 374, opinion of Foot, J.; People v. Stephens, 71 N. Y. 549; Patton v. Gilmer, 94 Am. Dec. 665."

The right by virtue of which the state regulates the use of its property is one of dominion and sovereignty, as clearly appears from the case of McCready v. Virginia, 94 U. S. 391, and other cases cited by the respondent's counsel; whereas, the right of the state under a contract with one of its individual members, as in the case at bar, is private and legal, the same in quality and character as the right of the individual with whom it contracts, and in no wise different therefrom. The exercise of the right or power of dominion over property possessed by the state, then, can have no application to the personal liberty of its members. In matters of independent contract, its rights, powers, and functions in a case like the one at bar, are the same as those of an individual, and therefore it cannot dictate the terms and conditions of a contract between an individual and one of its municipal corporations which would be illegal if the contract were made directly by itself.

If the views here expressed are sound, the statute in question seeks unlawfully to interfere with the personal liberty of the individual. I think it does, and that it is in conflict with our federal and state constitutions, and the treaty with Italy as well; and, until compelled by judicial authority to yield assent to such legislation as that in question here, I shall esteem it a privilege and solemn duty to stamp it with my disapproval.