THE PEOPLE, *ex. rel.* Newell, receiver, &c. *vs.* MUZZY, sheriff, &c.

An alteration in an assignment of a certificate given by the sheriff to the purchaser, upon a sale of real estate, made after its execution, where the alteration is of a character not to change its legal effect, will not avoid the assignment.

Where a sheriff's certificate of the sale on execution of land actually situated in the town of *Westfield*, accurately described the premises by specifying the lot, tract, original township and the village where situated, and an assignment annexed thereto, in terms conveyed all the right, title and interest of the purchaser in and to the certificate, but added " being for land, &c. situate in the town of *Portland ; held,* that the purchaser's interest passed by the assignment, notwithstanding the mistake, and that the legal effect of the instrument was not changed by erasing the word *Portland* and inserting *Westfield.*

Where a judgment creditor, seeking to acquire the right of the original purchaser of lands sold on execution upon a prior judgment, is also the assignee of the sheriff's certificate of sale, he is not bound to pay the money which the purchaser paid on the sale.

Where an assignment of the certificate of sale is presented to the officer by a junior judgment creditor, only to dispense with the payment by him of the amount paid on the sale, such assignment need not be filed with the county clerk.

Whether an assignee of the certificate of sale forfeits his right to a deed, where the premises have not been redeemed, by omitting to file such assignment with the county clerk within fifteen months after the sale, *quere*. *Per* JEWETT, J.

DEMURRER to the plea of the relator to the return of the defendant to an alternative mandamus. The writ of mandamus commanded the defendant, as sheriff of Chautauque county, to execute to the relator, as receiver of the City Bank of Buffalo, a deed conveying the title and interest of Isaac S. Smith in certain lands described in the writ, which had been sold on execution, or to make known, &c. why he had not so done.

The return of the defendant sets forth, in detail, the several matters occurring before him, which, so far as the same are necessary to the understanding of the questions of law presented to the court, are as follows : The lands in question were sold on the first day of May, 1841, by R. Sunderlin, a deputy of the sheriff of Chautauque, by virtue of an execution issued upon a judgment in this court, docketed May 5, 1837, recovered by the Bank of Chillicothe against Isaac S. Smith, John B. Macy and another person, and were purchased by W. D. Tabor for $40,90, to whom a certificate of sale was executed according to the statute. No redemption was attempted by the defendants, their representatives or grantees, within the year ; but on the first day of August, 1842, being the last day for acquiring the purchaser's right, Stephen Smith presented to and left with the deputy sheriff an assignment annexed to the certificate of sale and executed by Tabor the purchaser, in the following words : " For and in consideration of forty-six dollars, which the undersigned acknowledges to have received of Stephen Smith of Syracuse, I hereby sell, transfer and convey to said Stephen Smith, all my right, title and interest in and to the annexed certificate of sale, made and executed by Amos W. Muzzy, sheriff of the county of Chautauque, by R. Sunderlin, deputy sheriff, to William D. Tabor, on the first day of May in the year 1841, being for land and other property formerly belonging to Isaac S. Smith and John

B. Macy, situated in the town of *Westfield* in the county of Chautauque. Signed, and sealed with my seal at Buffalo, the 29th day of July, 1842. William D. Tabor. [L. s.]"

The certificate of sale upon which this assignment was written described the several parcels of land sold, by the number of lot, the tract or survey of the township in which they were respectively situated, or by metes and bounds; and all were described as being in the village of Portland, in the county of Chautauque and state of New-York.

The assignment was duly acknowledged, but at the time of the attempt to redeem, it had not been filed with the clerk of the county of Chautauque according to the statute. (*Stat.* 1835, *p.* 210, §§ 1, 2.)

Said Stephen Smith at the same time presented to and left with the deputy sheriff, certified copies of the dockets of several judgments in this court, some of which were against I. S. Smith and Macy jointly, and others against them separately, and constituting together a very large aggregate of indebtedness, which judgments were recovered either in the name of Stephen Smith himself, or the names of other individuals and assigned to him, together with copies of the assignments and affidavits of their execution, and of the amount due upon each, according to the requirements of the 60th section of the act. (2 *R. S.* 373.) These judgments were docketed at different times, subsequently to the docketing of the judgment on which the sale took place, and prior to the 24th day of February, 1838.

On the same day on which the above mentioned papers were presented, the attorney of the relator appeared before, presented to, and left with the deputy sheriff, a conveyance from Isaac S. Smith to the City Bank of Buffalo, of his interest in the lands included in the certificate of sale, bearing date the 24th day of February, 1838, and an instrument of defeasance, of a subsequent date, executed by the bank, setting forth that it had received such conveyance as a security for the payment of I. S. Smith's bond for $6840, held by the bank, by certain instalments therein mentioned, and also the affidavit required by the act of 1836, shewing the amount due upon the bond, and authenticated

copies of certain proceedings in the court of chancery, shew-ing that the relator had been duly appointed receiver of the bank, and had given the requisite security to enable him to enter upon the execution · of his trust. The attorney for the relator tendered to and left with the deputy sheriff the sum of $47, for the amount paid on the purchase by Tabor and the interest thereon.

The defendant in his return further stated, that on examining the papers and taking counsel in the matter, and .finding the mortgage to the City Bank of Buffalo to be subsequent to the judgments held by Stephen Smith, he had executed to said Smith a conveyance of the premises in question, in his name as sheriff of the county of Chautauque, pursuant to the statute in such case made and provided.

The relator pleaded to the return to the following effect : that the instrument of assignment from Tabor to Stephen Smith, set forth in the return, was, after the execution, sealing, acknowledg-ment and delivery thereof by Tabor, to wit, on &c. at &c. *altered,* by erasing the word " Portland," as it was in the original instru-ment when executed, and inserting instead thereof the word " Westfield," which alteration was made by Isaac S. Smith, at the time pretending to act at the request of·Stephen Smith, in the pre-sence and with the knowledge of Sunderlin, the deputy sheriff, but without the knowledge or consent of the said Tabor, with intent to defraud the relator, averring that the alteration was ma-terial, and that it was made contrary to the statute in such case made and provided, and concluding with a verification. ·

The defendant demurred, assigning for cause that the alter-ation was not material, and did not affect the rights of the relator or change the effect of the instrument. The relator joined in demurrer.

*T. J. Dudley,* jun. for the defendant.

· *T. Burwell,* for the relator.

*By the Court,* JEWETT, ·J. The question which is immedi-ately put in issue by the demurrer to the relator's plea, is, whether the erasure of the word " Portland" and substituting the word

" Westfield" in the assignment of the certificate of the sheriff by Tabor to Stephen Smith, avoided the assignment.

It is supposed that as the lands sold and described in the certificate of the sheriff were situate in the town of Westfield, and not in the town of Portland, that the assignment failed to convey any interest in them, by reason of that misdescription of the town in which the same were situate, and that therefore the alteration was material. The assignment was annexed to the certificate, and in terms conveyed to Smith all the right, title and interest of Tabor in and to the certificate, and the certificate itself contained a full description of the premises by number of lot, survey, township, range, &c. and stated that the premises were situate in the village of Portland. It is quite apparent to me, that the additional false description in the concluding part of the assignment, as it originally stood, to the effect that the premises mentioned in the certificate were situate in the town of Portland, was entirely immaterial, and that the substitution of the word " Westfield," as being the town in which the lands were in fact situate, was not material. The whole sentence was mere surplusage, and could in no manner affect the validity of the assignment, or the interest conveyed, or attempted to be, in the lands sold and described in the certificate ; for whether they lay in Portland, Westfield, or in any other town, the assignee of the certificate would have been entitled under it and the assignment, to the lands, or the interest in them, in whatsoever town they were situated. I hold, therefore, upon the authority of the case of *Herrick* v. *Malin,* (22· *Wend.* 388,) that the alteration in the assignment from Tabor to Smith, whether made by his agent or other person, did not avoid it. Stephen Smith, then, became entitled to the deed as assignee of the purchaser, or as a redeeming creditor, provided he had taken the necessary steps as such assignee or redeeming creditor, before the sheriff, on the first day of August, 1842.

Assuming, then, that Stephen Smith had acquired the interest of Tabor in the certificate, and taking into view the facts stated in the return, that he also presented and left with the officer the evidence required by the statute, shewing himself to be the

holder of unsatisfied judgments, which were a lien upon the premises, the relator, the lien of whose mortgage was subsequent to that of these judgments, could not acquire the title of the purchaser, without paying, in addition to the amount bid at the sale, and interest thereon, the further amount remaining due upon the judgments. This he did not do, but contented himself with simply paying the amount of Tabor's bid, with interest. He has failed, therefore, to entitle himself to a deed.

It is, however, insisted that Smith did not take the steps necessary to enable him to claim the amount due on his judgments, as a creditor. It is said that he ought, in addition to furnishing the proof of the dockets, assignments and amount due on his judgments, to the officer, to have himself actually redeemed, by paying to the officer the amount of the money paid on the sale by Tabor, with interest. That point was settled in *Ex parte Newell*, (4 *Hill*, 608.) Smith being assignee of the certificate, and in that character representing Tabor, the purchaser, and also uniting in himself the character of a subsequent judgment creditor, was under no necessity to pay the amount of the purchaser's bid to entitle himself to the effect of his proceedings, but he was entitled to receive from any creditor claiming under a lien junior to his, both the bid and interest and the amount of his judgments.

But it is insisted by the relator, that Smith did not present to the sheriff sufficient evidence, or take such steps as the assignee of Tabor, to entitle him to a deed under the provisions of the statute. (*Sess. Laws*, 1835, *p.* 210, §§ 1, 2.) The 1st section is as follows : "Before any *assignee*, or his personal representative, shall be entitled to a deed under this act, he shall cause the execution of any and every assignment under which such deed is claimed, to be duly acknowledged or proved, as deeds are required by law to be acknowledged or proved to entitle them to be recorded, before some officer authorized to take the acknowledgment and proof of deeds ; and shall cause all such assignments, with their certificates of proof or acknowledgment, to be filed in the office of the clerk of the county in which the real estate so sold is situated, but it shall not be necessary to have

acknowledged the execution of any assignment heretofore made of such certificate." Smith caused his assignment of the sheriff's certificate to be duly acknowledged, as deeds are required by law to be acknowledged to entitle them to be recorded, but he had not caused the assignment, with the certificate of acknowledgment, to be filed in the office of the clerk of the county in which the real estate so sold was situate, on or before the first day of August, 1842. This objection would not be free from difficulty, provided Smith is to be deemed as claiming a deed as assignee of the certificate. A literal construction of the provision of the act, in that case, might shut him out, if he could do no act, subsequent to the last day provided for redemption, to entitle him to a deed as *assignee.* It is not, however, any where declared that the filing of the assignment, to entitle the assignee to a deed, must take place within the fifteen months allowed for a creditor to acquire the purchaser's title. But this question is not necessarily involved in this case, for I am of the opinion that Smith may be regarded as a redeeming creditor. It was so held in *Ex parte Newell,* before cited, and in *The People* v. *Ransom,* (2 *Hill,* 51.) In that character, therefore, if not as assignee, Smith was entitled to the deed. The assignment of the certificate so presented to the sheriff, with the other evidence of his judgments, assignments, and amount due upon them, availed him so far as to relieve him from the necessity of paying into the hands of the officer the amount of the purchase money with interest. If I am right in this construction of the statute, it follows that Stephen Smith was entitled to the deed as a redeeming creditor. It is, therefore, unnecessary to decide the other questions raised in the case.

Judgment for the defendant.