## THE PRESIDENT, &c. OF THE CHAUTAUQUE COUNTY BANK *vs.* RISLEY.

The title of a purchaser from a redeeming creditor of land sold on execution, where such purchaser has received a sheriff's deed, is not prejudiced on account of an omission to prove and file the assignment of the redeeming creditor's right in the county clerk's office, according to the act of 1835. (*Stat. p.* 210, §§ 1, 2.) *Per* JEWETT, J.

One who claims title to land under a conveyance from another, is bound by recitals contained in a deed of the same premises under which such grantor held his title. *Per* JEWETT, J.

Accordingly, where the defendant claimed title under W. D. W., who claimed to hold the premises by virtue of a conveyance from a receiver appointed by the court of chancery, which conveyance recited a decree of that court setting aside, as fraudulent, a conveyance executed by a former owner of the premises, the defendant cannot set up the conveyance, so declared fraudulent, as a valid title. *Per* JEWETT, J.

The attorney of record for the plaintiff in a judgment, is not authorized, after the

The Chautauque County Bank *v.* Risley.

expiration of two years from the time it was rendered, to receive the amoun thereof from the defendant. *Per* JEWETT, J.

The Chautauque County Bank being prohibited by its charter from purchasing, holding, or conveying real estate, except in certain specified cases, and among others such lands " as shall have been purchased at sales upon judgments, decrees, or mortgages obtained or made for debts due the bank;" *held* that the bank has no capacity, after the time for redeeming had expired, to purchase the interest of a judgment creditor, who by virtue of his own judgment had acquired the title of the purchaser of land sold under execution, though the bank had unsatisfied judgments against the debtor whose land had been sold.

EJECTMENT for a house and lot in Fredonia, tried at the Chautauque circuit in July, 1844, before DAYTON, C. Judge.

The plaintiffs claimed title under a sale on execution against John Z. Saxton, and a proceeding to acquire the rights of the purchaser; the facts respecting which were as follows: The premises were sold by the sheriff of Chautauque county on the 30th day of May, 1840, on a *fi. fa.* issued on a judgment in this court in favor of Moses Adams against Saxton and one Maynard, docketed July 28, 1838. W. D. White became the purchaser for $450. There were several other judgments against Saxton, viz. one in favor of A. H. Porter, docketed May 7th, 1838, for $137,55; two in favor of the plaintiffs, both docketed January 7th, 1839, for $908,44 and $2236,67; one in favor of John Crane for $768,79, and one in favor of J. C. Stoddard for $916,52, both docketed on the same 7th January, 1839. On the 28th day of August, 1841, the plaintiffs, by an instrument signed by their president, assigned their judgments to Crane, who on the same day presented and delivered to the sheriff the proper papers and made the payment required to enable him as a judgment creditor in his own right and as assignee of the plaintiffs' judgments, to acquire the rights of White, the purchaser, to the premises. Porter having on the 1st of August, 1841, assigned his judgment to C. Tucker, the latter on the 30th of that month, as such assignee, and also as the agent of Stoddard, the other judgment creditor, presented and delivered to the sheriff the proper papers, and made the requisite payment to enable him to acquire the right of White as such purchaser; but neither Tucker or Crane paid any thing more than

the purchaser's bid and interest, and did not attempt to redeem from each other. On the 1st September following Crane executed an instrument reciting that the plaintiffs' judgments had been assigned to him for the purpose of enabling him to redeem the premises for their benefit, and that he had acted in that business as the plaintiffs' agent; in consideration whereof he directed the sheriff to execute the conveyance to which he was entitled, to the plaintiffs. Tucker on the same day executed to the plaintiffs an instrument in writing, by which, for value received, he assigned to them the judgment which Porter had assigned to him, and authorized and required the sheriff to execute the conveyance to which he was entitled to the plaintiffs. The sheriff, by a deed dated the same day, but actually executed April 27, 1843, conveyed the premises to the plaintiffs. This deed recited the proceedings by Crane to acquire the title of White, as having been taken by the plaintiffs themselves as judgment creditors of Saxton. It also recited the proceedings by Tucker, and stated that he had assigned his rights to the plaintiffs. It appeared that the money paid to the sheriff by Tucker and Crane still remained in the sheriff's hands. Upon giving the foregoing proof and showing that the defendant was in possession, and that he claimed to hold under White, the plaintiffs rested.

The defendant moved for a nonsuit, insisting, 1. That creditors who have acquired the interest of purchasers on execution, cannot assign such interest so as to warrant the sheriff in executing a conveyance to the assignee; 2. That the assignments in this case had not been proved or filed in the county clerk's office; and 3. That the plaintiffs were not authorized by their charter to purchase the interests of Tucker and Crane, or either of them. The motion was denied, and the defendant excepted.

The defendant proved that on the first day of October, 1837, Saxton and his wife executed to John Crane and Pearson Crosby a conveyance of the premises in question, together with other lands, in trust to sell the same for the benefit of the creditors of Saxton. It was recorded November 23d, 1837; and in the

margin of the record the clerk had made an entry to the effect that by a decree of the chancellor, made the 9th day of April, 1840, the conveyance had been declared fraudulent and void, and had been directed to be cancelled. The plaintiffs attempted to prove the proceedings and decree of the court of chancery in a bill filed by Webb & Douglass against Saxton and the trustees under the assignment; but being unable to produce the pleadings or enrolled decree, the evidence given on that subject was rejected. The defendant however gave in evidence a conveyance executed by Saxton to E. A. Lester, as receiver in the chancery suit, dated November 1, 1838, by which the former conveyed to Lester all his real estate and other property. The judge, however, held that this conveyance was inoperative for want of proof of the order and proceedings referred to in it. The defendant also gave in evidence a conveyance executed by Crane, one of the trustees, to Lester, as receiver, dated 9th September, 1839, which professed to convey, pursuant to an order made in the chancery suit before referred to, all the money and property which Crane claimed as the assignee of Saxton. The defendant also gave in evidence a conveyance in *fee simple*, executed by Lester, as receiver, to W. D. White. It was dated May 11, 1840, and embraced the premises in question, with the other lands conveyed by Saxton to Crane and Crosby, and professed to be executed pursuant to the proceedings and decree in the chancery suit referred to, which were recited at large, and in fulfilment of a purchase of the property made by White of the receiver, at auction, for $273, and was in terms subject to the liens and incumbrances on the property, and at the risk of White.

The defendant proved that on the 26th August, 1841, White paid to one Marshall, who was one of the attorneys of Porter in recovering the judgment against Saxton, the amount due on that judgment, and took his receipt; but the authority of the attorney had been revoked, and White was aware of that fact. The judge held this evidence to be immaterial, and rejected the receipt on the ground that Marshall had no authority to receive the money. The plaintiffs proved that the assignment of their

judgments to Crane was executed with a view to make him their agent to acquire the interest of White; and that he acted in that business as their agent, and that it was so understood by the sheriff.

The evidence being closed, the defendant, in addition to the positions which he had taken on the motion for a nonsuit, insisted that the payment to Marshall extinguished the judgment of Porter; that the assignment by Saxton, to Crane and Crosby, prevented the judgments on which the redemptions were founded, from being liens; or, at all events, that the conveyance by Saxton to Lester prevented the judgments docketed after the date of that conveyance from attaching as liens to the premises in question. He also insisted that the deed from Lester to White conveyed to the latter a good title to the premises. The judge being of opinion that none of the objections were well taken, directed the jury to find a verdict for the plaintiffs, which they accordingly did, and the defendant excepted. The defendant moves for a new trial on a case.

*D. Cady*, for the defendant.

*N. Hill, Jr.* for the plaintiffs.

*By the Court*, JEWETT, J. The title of the plaintiffs is not prejudiced by the failure to have the instruments executed by Tucker & Crane, pursuant to which the sheriff made the conveyance to them, proved and filed in the county clerk's office, according to the act of 1835. (*Stat. p.* 210, §§ 1, 2.) That point was adjudged in *The Bank of Vergennes* v. *Warren*, (7 *Hill*, 91,) and has been followed in several subsequent cases. (*a*.)

If the conveyance executed by Saxton and his wife to Crane and Crosby, on the first day of October, 1837, was operative, none of the judgments in question were liens on the premises

---

(*a*.) *The People* v. *Muzzy*, (1 *Denio*, 239;) *The People* v. *Ransom*, (*ante, p.* 145.)

as they were all subsequent to the date of that conveyance. The entry in the margin of the record in the clerk's office was no evidence of the decree referred to in it, nor was there any other competent evidence of that decree. The conveyance, therefore, is unaffected by the alleged decree. Nor can the position now taken, that the trust conveyance is ineffectual because the trustees have ceased to act under it, be sustained. They could not, by refusing to proceed after accepting the trust, reinvest Saxton with the title, or let in subsequent judgments against him. The point not having been taken on the trial that the trustees had never accepted the trust, it cannot now be relied on. The ground of objection then taken was different; and if it had been made a question whether the trust had been assumed by the trustees, we cannot say but that the fact would have been explicitly proved. I am of opinion, however, that the defendant, who claims under White, is estopped from setting up this conveyance to the trustees. White claims to derive title from Saxton by means of a deed executed by Lester, as receiver, pursuant to a sale made by him in that character, in obedience to a decree in a chancery suit prosecuted by Webb and Douglas against Saxton, Crane and Crosby. That conveyance contains full recitals of a decree of the court of chancery entered in that cause on the first day of November, 1838, whereby it was adjudged that Saxton should assign and deliver to the receiver all his property and effects, including his real estate, which were in his possession at the time of the service of the injunction in the cause, which is stated to have been the sixth day of October, 1838. It also recites the conveyance of Saxton to Lester, as receiver, on the 5th day of January, 1839, which embraced this real estate, according to the decree; the order requiring Crane, one of the trustees, to convey to the receiver whatever he held under the assignment from Saxton, and the conveyance by him executed in obedience to that order on the 9th day of September, 1839; and, finally, the decree ultimately made in the cause, on the 29th day of February, 1840, setting aside the conveyance to the trustees as fraudulent, and directing the property to be advertised, sold and conveyed

by the receiver; and that Lester, as such receiver, had made sale of all the real estate, including that for which this action is brought, to White, subject to the liens and incumbrances thereon, and at his risk; and the conveyance is professedly made in accordance with those proceedings. The defendant, holding under White, is bound by the recitals in the deed by which the latter acquired his title from Lester. The general rule is well settled that recitals in a deed estop parties and privies in estate. (*Carver* v. *Jackson*, 4 *Pet. R.* 87; *Jackson* v. *Parkhurst*, 9 *Wend.* 209; *Penrose* v. *Griffith*, 4 *Bin.* 231.) The assignment to the trustees, therefore, being considered void, there was nothing to prevent the judgments docketed in May and July, 1838, from being regarded as liens upon the premises; and upon one of these the sale was made which is the foundation of the plaintiffs' title, and upon the other the redemption was made by Tucker.

The next inquiry is, whether the plaintiffs acquired the title of the purchaser, White, by means either of the redemption made by Tucker, or that made by Crane. Neither of these persons professed to redeem from each other, and as the judgment upon which Tucker proceeded was the prior lien, if his redemption was valid, that made by Crane on a junior judgment, without paying the elder judgment held by Tucker, was unavailing. Tucker followed the prescriptions of the statute in what he did to acquire the title of White. It is objected that the judgment of which he was the assignee had been paid to Marshall, the attorney. He however had no authority to receive the money. More than two years had expired since the judgment was rendered, and he could no longer acknowledge satisfaction. (2 *R. S.* 362, § 24.) Besides, his authority had been expressly revoked by Tucker, of which White was informed when he paid the money. The tender of the money, said to have been made to Tucker, did not *per se* destroy the lien of the judgment. It might notwithstanding be used to effect a redemption. (*Jackson* v. *Law*, 5 *Cowen*, 248; *S. C.* 9 *id.* 641.)

Being of opinion, therefore, that Tucker's redemption was

valid, it is unnecessary to inquire whether the subsequent judgments upon which Crane proceeded were liens on the premises or not. The question respecting the right of a creditor who has effected a redemption to transfer the interest thus acquired to another, before the execution of a conveyance by the sheriff, applies as well to the redemption by Crane as to that by Tucker. Crane was the unqualified assignee of the judgments recovered by the plaintiffs, and whatever he did in making the redemption was in that character. It was in no sense a redemption made by the plaintiffs, whatever may have been the understanding of the witnesses as to the relation which Crane sustained towards the plaintiffs in these transactions.

This brings me to the question whether the plaintiffs had a legal capacity to acquire a title to the premises by an assignment from one who had acquired the title of the purchaser at the sheriff's sale. That depends upon the construction to be given to the charter of the plaintiffs' bank. (*Sess. Laws*, 1831, *ch.* 181.) It enacts that "the real estate which it shall be lawful for the said corporation to purchase, hold and convey, shall be," that which is required for its immediate accommodation in the transaction of its business, such as shall be mortgaged to it to secure loans or debts due, or conveyed to it in satisfaction of debts ; and 4. "such as shall have been purchased at sales upon judgments, decrees or mortgages, obtained or made for such debts." It is added that "the said corporation shall not purchase, hold or convey real estate, in any other case, or for any other purpose." (§ 4.)

The fourth subdivision above referred to contains the only authority which it is pretended the plaintiffs had to receive the transfer in question. At the time of the execution of the instrument of transfer, Tucker was the owner of all the rights which White acquired by his purchase at the sheriff's sale, and this interest had become absolute, the fifteen months allowed for redeeming having expired. He was therefore entitled to a conveyance of the premises, and also to his judgment against Saxton, which was unaffected by the redemption. (*Emmet* v.

*Bradstreet,* 20 *Wend.* 50.) Both these rights or interests, he, by this deed, attempted to convey to the plaintiffs. Admitting that the bank might, within the equity of this statute, have acquired the rights of White on account of their judgments against Saxton, by paying the sum bid by White with the interest, and conforming to the requirements of the statute providing for redeeming lands sold on execution, as I am inclined to think it might, still that is not what has been done in this instance. Nor was the transfer which Tucker executed, made in consideration of any debt previously contracted to the plaintiffs. The purchase from Tucker was independent, so far as the evidence discloses, of any such consideration—and I am unable to discover any difference in principle, between this case, and that which would have been presented, if the bank had delayed until Tucker had perfected his title, and had then prevailed on him to have released or assigned his right to the bank upon some consideration, other than for a debt previously contracted. The circumstance that the bank had a debt against Saxton contracted in the course of its dealings, which must be lost unless saved by the benefit of the bargain which could be made with Tucker, does not bring the case within the terms or spirit of the statute. I am of opinion, therefore, that the purchase by the plaintiffs was without authority of law, and that it was void. A new trial ought consequently to be granted.

BRONSON, Ch. J. dissented.

New trial granted.