# Cases

# FOURTH DEPARTMENT,

AT

# GENERAL TERM,

## January, 1885.

---

## THE TOWN OF SOLON, Respondent, v. THE WILLIAMS-BURGH SAVINGS BANK, Appellant.

*Town bonds — when the petition is sufficient to give jurisdiction to the county judge — order for notice of hearing — it need not be in writing — taxable property, how determined — the bonds are not invalidated by the omission of seals — effect of the unauthorized affixing of a seal after their delivery — what facts estop the town from disputing the validity of the bonds.*

July 2, 1870, a petition was filed, under the general bonding act (1869, chap. 907), with a county judge, containing the following recital: "The undersigned, *representing* a majority of the tax-payers of the town of Solon * * * and owning or representing a majority of the taxable property in the corporate limits of said town." It was verified by one of the petitioners in an affidavit, which stated "that the persons signing said petition are a majority of the tax-payers, whose names appear on the last preceding tax list and assessment-roll in said town." * * *

*Held*, that the petition and the verifying affidavit were to be construed together, and that, as so construed, the petition sufficiently alleged that the persons signing the petition were a majority of the tax-payers of the town, to confer upon the county judge jurisdiction to ascertain and determine that fact.

The act provided that upon the filing of the petition, it should be "the duty of the county judge to *order* that a notice shall be forthwith published."

*Held*, that it was not necessary that the order should be in writing, or that it should be entered, or that the order and the notice should be contained in separate instruments; that it was only necessary to prove that an order was in fact made.

That the limitation imposed by the act, that the amount of the bonds issued should not exceed twenty per cent of the whole amount of taxable property as shown

by the tax list and assessment-roll, referred to the amount appearing upon the roll signed by the assessors, and not the amount as equalized by the board of supervisors.

The fourth section of the act made it the duty of the commissioners "to cause to be made and executed the bonds of such municipal corporation, attested by the seal of such corporation affixed thereto, if such corporation has a common seal, and if not then by their individual seals." The town had no seal. The bonds issued by the commissioners recited that they had "set their hands and seals" thereto, but in fact no seals were affixed, although the letters [L. s.] were printed opposite to each of the signatures.

*Held,* that the omission of the seals did not invalidate the bonds.

After the bonds had been issued, and before they came into the possession of the defendant, some person placed seals upon the bonds opposite to the several signatures. The defendant bought the bonds in good faith, and without notice that they had been so altered.

*Held,* that the unauthorized addition of the seals did not justify an action by the town to have the bonds so purchased by the defendant canceled and surrendered.

That the fact that after the bonds had been issued a portion of them were returned to the commissioners, who canceled the same and issued in place thereof new bonds, payable at a place other than that named in the first bonds, did not authorize a judgment directing that such new bonds be surrendered and canceled.

That the facts that from 1871 to 1877 the commissioners had, annually, requested the board of supervisors to levy and collect an amount sufficient to pay the interest on the bonds, and that from 1873 to 1877 the supervisor of the town had made a like request, and that the said taxes had been collected and the interest paid, estopped the town from maintaining this action. (HARDIN, P. J., not concurring.)

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury.

July 2, 1870, certain tax-payers of the town of Solon filed with the county judge of Cortland county a petition, under chapter 907, Laws 1869 (the General Bonding Act), the first paragraph of which reads as follows :

" *To the honorable the county judge of Cortland county :*

" The undersigned, representing a majority of the tax-payers of the town of Solon, in said county of Cortland, whose names appear upon the last preceding tax list or assessment-roll of said town (being the tax list or assessment-roll for the year 1869), and owning or representing a majority of the taxable property in the corporate limits of said town."

The petition concludes with a prayer for an adjudication author-

izing the town to issue bonds for $44,800, in aid of the construction of the Utica, Chenango and Cortland railroad. The petition was verified July 2, 1870, by one of the petitioners. The verifying affidavit states, among other things, "that the persons signing said petition are a majority of the tax-payers whose names appear upon the last preceding tax list and assessment-roll in said town, and that they own and represent a majority of the taxable property in the corporate limits of the town of Solon, and that the matters set forth in said petition are true." The whole of the petition did not appear in the case, the names of the petitioners being omitted, though the case stated that it contains "all the testimony taken on the trial."

On the same day, July 2, 1870, the county judge signed a notice addressed "To whom it may concern," reciting the substance of the petition, and stating: "Now, therefore, pursuant to an order this day duly made by the undersigned, as county judge of Cortland county, upon presentation of said petition, notice is hereby given that the undersigned, as such county judge, will, on the 16th day of July, 1870, at two o'clock in the afternoon of that day, at the court-house in Cortland village, in said county, proceed to take proof of the allegations in said petition," etc. The notice was duly published.

July 16, 1870, the county judge made an adjudication authorizing the town to issue bonds for $44,800, and appointed three commissioners. The adjudication recited the filing of the petition, and stated: "Whereupon the said county judge, on said 2d day of July, 1870, pursuant to the statute, duly made an order that a notice should be forthwith published," etc.

July 30, 1870, the commissioners duly took their oaths of office, and on the same day subscribed for $44,800 of the stock of said railroad company, and thereafter issued bonds for that amount, dated September 1, 1870, and payable September 1, 1900, with semi-annual interest at seven per cent.

The bonds were delivered to the railroad company in payment for stock, as follows:

November 13, 1870, Nos. 1 to 30 inclusive, $100 each.... $3,000
November 15, 1870, Nos. 1 to 3 inclusive, $500 each.... 1,500
July 12, 1871, Nos. 31 to 38 inclusive, $100 each........ 800

| | |
|---|---:|
| July 16, 1871, No. 4 ..................... | $500 |
| July 31, 1872, Nos. 39 to 258 inclusive, $100 each ...... | 22,000 |
| July 31, 1872, Nos. 5 to 38 inclusive, $500 each ........ | 17,000 |
| | $44,800 |

The coupons which had matured prior to the dates of the delivery of the bonds were, before delivery, detached and destroyed by the commissioners.

In 1869 the property within the town was assessed at $225,300, as appears by the assessment-roll verified and filed by the assessors for that year. The board of supervisors, in equalizing the assessments of the various towns, fixed the equalized value at $214,327. The bonds authorized to be issued, and issued, were less than twenty per cent of the assessed value, as shown by the assessment-roll; but were more than twenty per cent of the value as equalized by the board of supervisors.

The bonds first issued and delivered were payable at the office of the supervisor of the town. The railroad company being unable to realize on the bonds payable at the office of the supervisor, returned, October 14, 1872, $24,000 of the bonds, which the commissioners canceled; and on the same day issued in lieu thereof forty-eight bonds for $500 each, numbered 6 to 53 inclusive, and payable at the National Park Bank at the city of New York.

The obligations were in the usual form of municipal bonds, and concluded as follows: " In witness whereof the within named com-missioners, duly appointed under and by virtue of and for the pur-poses of said act, have caused this bond to be made and executed, and have set their hands and seals hereto, this first day of September, in the year one thousand eight hundred and seventy.

> "LYMAN PECK, JR.,   [L. s.]
> "ORIN RANDALL,   [L. s.]
> "JOHN T. BUTMAN,   [L. s.]
> " *Commissioners.*"

The town had no common seal. The commissioners did not affix their individual seals, but signed at the left of, and opposite to the letters " L. S." printed within scrolls; and so issued the bonds and delivered them to the railroad company in payment of the subscrip-

tion of the town for the stock of the company. The railroad company disposed of the bonds in the city of New York. In September, 1875, defendant purchased thirty-two of the $500 bonds (being part of those delivered October 14, 1872) in good faith, paying therefor ninety-five cents on the dollar of their face value, and has ever since held them. At the time they were purchased by the defendant, common-law seals were affixed to the signature of each commissioner, but by whom is unknown. The court finds that they were affixed by some former owner. All of the coupons upon the bonds which fell due prior to March 1, 1878, were paid from taxes levied and collected pursuant to the bonding act, but those maturing on and since that date have not been paid.

A certificate for the stock subscribed and paid for has not been issued by the railroad company to the town, but the town has been recognized as a stockholder, and its commissioners have acted and voted in the stockholders' meetings of the railroad company. No proceedings have been taken to review or set aside the adjudication of the county judge. This defendant has never sued or threatened to sue the town.

This action was brought to compel the defendant to surrender its bonds to the plaintiff for cancellation, upon the ground that they are void, because,

1. The county judge did not acquire jurisdiction to make the adjudication.

2. The bonds were not sealed.

3. They were altered after their execution and delivery, by affixing common-law seals without the authority of the town or its commissioners.

4. The bonds were payable within less than thirty years from the dates when they were delivered.

5. The commissioners having issued the total amount directed by the adjudication, they were without power to cancel the bonds and reissue a like amount, which reissue embraced the bonds in suit.

6. The bonds exceeded twenty per cent of the tax-roll of 1869, as equalized as between the towns of the county by the board of supervisors, though not exceeding twenty per cent of the assessment-roll of that year.

The Special Term held that the first, fifth and sixth defenses

were not tenable, but that the second, third and fourth were, and ordered a judgment to be entered directing the defendant to surrender its bonds for cancellation. Judgment was entered, from which the defendant appeals.

*Isaac S. Newton* and *Edward B. Thomas*, for the appellant.

*J. McGuire*, for the respondent.

FOLLETT, J.:

The respondent urges in support of the judgment all of the grounds above stated except the sixth, which was not argued and is not referred to in its brief.

The provisions of the general bonding act, so far as it relates to the power to bond, and the mode in which the power is to be executed, are divisible into two classes. The first class prescribes the conditions or facts which must exist before a town can borrow money for investment in the stock or bonds of a railroad corporation, and the procedure by which those conditions or facts are to be ascertained and authenticated. The second class prescribes the mode by which, and the form in which the evidences of indebtedness for the money borrowed are to be issued.

One of the facts which must exist, is the consent of a majority of the tax-payers of the town representing a majority of the taxable property of the town, as shown by the last preceding tax list or assessment-roll; that the town issue its bonds to an amount named in the petition, not exceeding twenty per cent of the taxable property, as shown by said assessment-roll, and invest the proceeds in the stock or bonds (as said petition may direct) of the railroad company named in the petition. Whether this fact exists, is to be determined by the county judge by a procedure specified by the act, which determination has the same force and effect as other judgments and records in the courts of record in this State. This fact has been determined in respect to the town of Solon by the county judge of Cortland county; the determination has been entered of record, and the bonds issued.

The town seeks to have these bonds canceled upon the ground that the county judge did not acquire jurisdiction to make the determination, because :

1. The petition upon which he proceeded states, "the undersigned, *representing* a majority of the taxpayers, etc.," instead of "the undersigned, a majority of the taxpayers, etc.," desire the town to issue its bonds to the amount and for the purpose named in the petition.

2. The county judge did not make and enter in the clerk's office a written order directing the publication of a notice that on a day named he would proceed to take proof of the facts set forth in the petition.

It is conceded that under the Constitution the legislature had power to pass this act, and like all statutes constitutionally passed it should receive a reasonable construction; one, at least, which, though not promoting, will not inevitably defeat the attainment of the end which the legislature and the people at the time, thought it wise to authorize.

The statute confers jurisdiction upon the county judges to determine whether or not a town shall be authorized to create a debt for the purpose of aiding in the construction of a railroad, and prescribes the mode in which the determination is to be made, which is in the nature of a proceeding *in rem*. The proceedings must be initiated by a petition filed, which must assert that the petitioners are a majority of the tax-payers of the town, representing a majority of the taxable property thereof, which must be verified.

We think the petition asserts this fact in legal effect, though not in the precise words of the statute.

The term, "representing," in the petition, in connection with such portions of the petition as are before us, fairly construed, means, that the undersigned stand for, or are, a majority of the tax-payers of the town. That the signatures hereunder written personally represent a majority of such tax-payers. It cannot be construed, as is contended, to mean that the undersigned represent as agent, or otherwise, a majority of the tax-payers. Nothing of the kind is said or is inferable from the language used. The affidavit of the verifying tax-payer stated "that the petitioners were a majority of the tax-payers of said town." The petition and the verification together constituted the petition as presented to the county judge, and upon which he acted. The petition and the accompanying affidavit must be read and construed together. ( *Whiting* v. *The*

*Town of Potter*, 18 Blatchf., 165.) The whole of the petition is not contained in the case, and we cannot, for the purpose of overthrowing the decision of the Special Term upon this question, or the jurisdiction of the county judge, assume that the signatures did not purport to have been made, or were not, in fact, made by the petitioning tax-payers in person.

The Court of Appeals has held that the procedure prescribed by the statute must be strictly pursued to enable a town to create a debt for this purpose; but no court has yet held that the county judge does not acquire jurisdiction in case the petition is not in the precise words of the statute; that a word, or a punctuation mark added or omitted, though not affecting the sense, is fatal.

It has been argued that the county judge does not acquire jurisdiction to proceed with his inquiry unless a majority of the tax-payers, representing a majority of the taxable property, join in the petition before it is filed with the county judge; and that this fact must affirmatively appear. It is paradoxical to say that the jurisdiction of the county judge, to inquire and determine whether a majority of the tax-payers representing a majority of the taxable property have signed, depends upon the existence of the very fact which he is directed to determine the existence of. When a petition is filed asserting the jurisdictional fact, the county judge has jurisdiction to proceed, and must proceed with the inquiry.

His adjudication is based upon the signatures to the petition and upon the consents of the tax-payers, given during the pendency of the proceedings before him, and if, at the close of the proceedings, a majority of the tax-payers representing a majority of the taxable property have consented, he is to so adjudge and appoint commissioners. If a majority have not consented, he is to so adjudge. His adjudication is based upon the facts as they then exist, and the statute makes it final unless it is overthrown upon *certiorari*.

The court finds that the statutory notice published, was dated and signed by the county judge, July 2, 1870, and recited that it was published pursuant to an order made that day, but that the order was an oral one, and that a written order was not made or entered, other than as one is inferable from the notice. The statute does not prescribe the form or contents of the order, that it shall be in writing, or that it shall be entered. "It shall be the

duty of said county judge to order that a notice shall be forthwith published in some newspaper in such county, etc." (Sec. 1, chap. 907, Laws, 1869.) This was done, as is found by the court, and written evidence that the order was made is contained in the notice signed by the judge, and also in the judgment entered. The statute does not require the order and notice to be separate instruments. Had the document read : It is ordered that the following notice be published, and concluded with a notice signed by the judge, its sufficiency would hardly be questioned, but it would not have been more potent nor would it have afforded better record evidence of the existence of the order than is furnished by the present record. The county judge gave the notice required by the statute, and it is hypercritical to say that his act is void, because he did not by a formal written order ,entered, direct himself to do that which it was his duty to do, and just what he actually did do.

The county judge acquired jurisdiction to adjudge that a majority of the tax-payers representing a majority of the taxable property had consented to the creation of this debt, and to appoint commissioners to carry the judgment into effect.

In 1869, the assessed valuation of the property in the town of Solon was $225,300. The bonds authorized to be issued, and issued, were less than twenty per cent of this amount, but the value of the property assessed in the town for that year, as equalized by the board of supervisors, was $213,333, and the amount of bonds authorized, and issued, exceeded twenty per cent of the equalized valuation. The term "assessment-roll," has been several times defined to mean the list or roll of taxable property and persons, completed, verified and deposited by the assessors with the town clerk, as required by the statutes. (*Mygatt* v. *Washburn*, 15 N. Y., 316; *Clark* v. *Norton*, 49 id., 243 ; *People ex rel. Gillies* v. *Suffern*, 68 id., 321; *People ex rel. Chamberlain* v. *Forrest*, 96 id., 544.)

Words and terms having a precise and well settled meaning in the jurisprudence of a country are to be understood in the same sense when used in its statutes ; unless a different meaning is unmistakably intended. (*McCool* v. *Smith*, 1 Black, 459 ; *Stephenson* v. *Higginson*, 3 H. L. Cas., 638.) This point was not argued, and does not seem to be relied upon by the respondent upon this appeal, and need not be further considered.

By these proceedings and the adjudication, the *status* of the town was changed ; it had been incompetent, but was now competent to create a debt for the purpose named, and it stands in the same position in respect to its debt and creditors, that any municipal corporation stands in respect to a debt which it may create. The town purchased stock in the railroad corporation to the amount authorized, and paid for it in bonds, or, in other words, it created a debt for a lawful purpose and issued its promises to pay, which for a time it faithfully kept, but now seeks to repudiate. The only remaining questions are whether the commissioners so far deviated from, or exceeded their statutory powers, in carrying the will of the town and the judgment of the court into effect, as to entitle the town to repudiate its debt and compel the innocent holders of its bonds to surrender them for cancellation.

Can this action be maintained on the ground that the commissioners did not affix the " common seal " of the town, or " their individual seals " to the bonds as directed by the fourth section of the act ? The end to be attained by the proceedings before the county judge, was to enable the town to borrow money on its credit, and invest it in the stock of the railroad company, and thus aid in the construction of the road. The money was borrowed, the stock subscribed and paid for, and the end attained.

It is contended, in behalf of the town, that it can repudiate its obligations to pay the money borrowed, and compel, through the aid of a court of equity, the holders of its obligations to surrender them for cancellation because its commissioners failed to execute its obligations in the precise mode directed by the statute. In other words, the town seeks this relief, not because of any wrong perpetrated, or attempted by the defendant, but because of a mistake made by the commissioners of the town. This question has no connection with the proceedings instituted and carried on, to authorize the town to raise money for this purpose, and must be considered entirely apart from all questions arising out of the initiatory proceedings carried on before the county judge, and upon the theory that the commissioners were authorized to borrow money upon the credit of the town, and invest it in the stock of the railroad. Chapter 314, Laws 1869, authorized the town of Springport to borrow money on its bonds, and take stock in the Cayuga Lake

Railroad Company. The town commissioners were authorized "to execute bonds therefor under their hands and seals." The town had no seal. The money was borrowed and bonds were issued therefor without seals. It was held, in an action brought on the coupons, that this provision was merely directory, and that the bonds were valid notwithstanding the omission of the seals. (*Draper v. Springport*, 104 U. S., 501.)

*Town of Springport* v. *Teutonia Savings Bank* (75 N. Y., 397) was an action in equity by the town to set aside the bonds, issued under the statute referred to, upon the ground, among others, that the bonds were not sealed, as required by the statute.

In discussing this question the court, by RAPALLO, J., said at page 408: "I have not discussed the point made by the appellant's counsel in regard to the defect in the execution of the bonds, which consists in the omission of the commissioners to affix a seal to the signatures, as directed in the act. The omission cannot have produced any injury to the rights of the town, and the direction to affix seals was not intended for its benefit, but for the benefit of the lender of the money. I do not regard the point made in respect to it as one which addresses itself with much force to a court of equity, as a ground for exercising its discretionary power to decree the cancellation of a security upon which an innocent party has advanced money. I should be inclined if there were no more equitable defense than this, at least to leave the town to its legal defense on this ground. But we have considered it unnecessary to pass upon that point, as a substantial defense to the bonds appears, which is quite sufficient to sustain that branch of plaintiff's case."

*Avery* v. *Springport* (14 Blatchf., 272) arose over the same issue of bonds, in which it was held that the omission of the seals invalidated the bonds. This case, though not cited in *Draper* v. *Springport* (*supra*), is in effect overruled by it.

The commissioners of the town of Yates issued bonds, without seals, under chapter 811, Laws of 1868, as amended by chapter 241, Laws 1869, which authorized the commissioners to borrow money "and to execute bonds therefor under their hands and seals respectively." The money was borrowed and invested in the stock of a railroad corporation. The bonds given for the money recited, as in the case at bar, that they were issued under the hands and seals of

the commissioners. In an action on the coupons, it was held that the bonds were valid, notwithstanding the omission of the seals. (*Phelps* v. *Town of Yates*, 16 Blatchf., 192.)

We are unable to discover any difference in principle between the statutes cited in the foregoing cases and the one under consideration, or between the cases cited and the one at bar.

By a statute of the State of Texas, the city of San Antonio was authorized to borrow money on bonds and subscribe and pay for stock in a railroad corporation. The twelfth section of the act provided that the officers, whose duty it was to carry out the law, " may issue bonds bearing interest, or otherwise pledge the faith of the city." Obligations were issued in the form of bonds, but not under seal, and for this reason it was held that the obligations were not bonds. (*San Antonio* v. *Mehaffy*, 96 U. S., 315.)

The word " bond " *ex vi termini*, imports a sealed instrument. (*Cantey* v. *Duren*. Harp. [S. Car.], 434 ; *Taylor* v. *Glaser*, 2 Serg. & R. [Pa.], 502 ; *Denton* v. *Adams*, 6 Vt., 40 ; *Deming* v. *Bullitt*, 1 Blackf., 241 ; *Skinner* v. *McCarty*, 2 Port. [Ala.], 19 ; *Harman* v. *Harman*, 1 Baldw., 129 ; *U. S.* v. *Stephenson*, 1 McLean, 462 ; *Board of Education* v. *Fonda*, 77 N. Y., 355.) The Supreme Court of the United States (*San Antonio* v. *Mehaffy*, 96 U. S., 315), in considering the validity of the San Antonio obligations, said : " The securities issued were within the latter category. If that clause were wanting, we should have no difficulty in holding that the city was, under the circumstances, estopped from denying their validity. The doctrine of *ultra vires*, whether invoked for or against a corporation, is not favored in the law. It should never be applied where it will defeat the ends of justice if such a result can be avoided." ( *Whitney Arms Co.* v. *Barlow*, 63 N. Y., 62.)

In *Wadsworth* v. *Wendell*, a soldier was entitled to lot 7 in Solon. Before he received his patent from the State, he conveyed to the plaintiff his title and interest in the lot by an instrument, in form, a deed, with a covenant for further assurance. The deed was not sealed, but concluded : " In witness whereof, I have hereunto set my hand and seal." After the patent was issued, the soldier conveyed the lot to the defendant's grantor by an instrument under seal. The plaintiff brought ejectment and was defeated. (12

Johns., 355.)  The plaintiff then brought an action in equity to compel the defendant to convey the land to the plaintiff.  The plaintiff's unsealed deed was held to be a good conveyance in equity, and the defendant was compelled to convey the lot to the plaintiff. (*S. C.*, 5 Johns. Ch., 224.)  If equity will aid a party to acquire his rights under an instrument so executed and void at law, a court of equity will not order an instrument so executed to be surrendered for cancellation.

The cases are very numerous in which obligations in the form of bonds, without seals, have been held valid when executed by or to public officers or municipal corporations, under statutes requiring the bonds to be under seal, and but two or three cases need be cited: *Kelly* v. *McCormick* (28 N. Y., 318); *Board of Education* v. *Fonda* (77 id., 350); *United States* v. *Linn* (15 Peters, 290); *Whitney* v. *Coleman* (9 Daly, 238).

When bonds are authorized by statutes which prescribe their conditions and mode of execution, instruments departing from the prescribed conditions, but effecting substantially the end sought to be attained, have uniformly been held good when freely and fairly entered into.  The commissioners of the towns of Venice and Genoa were authorized to issue " bonds " in aid of a railroad corporation, but the act did not prescribe whether with or without seals. They were issued without seals.  The Supreme Court and Court of Appeals, recognizing the rule that the term " bond " implied an instrument under seal, held the unsealed bonds valid.  (*Gould* v. *Venice*, 29 Barb., 442; *People ex rel. Fiedler* v. *Mead*, 24 N. Y., 114.)  The bonds in controversy are not invalid because not sealed.

The court finds that the seals were affixed before the bonds were purchased by the defendant, by some previous owner, without the consent or authority of the commissioners.  It is urged that the bonds being negotiable and purporting on their face to have been issued under seal, that any owner was authorized to affix the seals. Without stopping to consider this question, we think this action cannot be maintained because the seals were affixed in the manner found by the court.  The court does not find that the seals were affixed with a fraudulent intent, and there is no evidence in the case to warrant such a finding.

" Sometimes an alteration in a note, seemingly material, and such as may *prima facie* render it void, is innocent and does not vitiate the instrument. So it is when it is done to correct a mistake in penning the note, or to make it express the real bargain of the parties, or to give the proper legal form to their contract. In such case the payee has a right to enforce it. Again, if the alteration was made without fraudulent intention, the payee may resort to the original indebtedness, if that was independent of the note and has not been discharged by the execution of it, and pursue the maker upon that. (*Clute* v. *Small*, 17 Wend., 238; *Meyer* v. *Huneke*, 55 N. Y., 412.) But to have such resort he must be able to produce and surrender the note. Hence its real value is not destroyed by the alteration. Its worth is as much as the original independent indebtedness was worth at the time of the conversion." (*Booth* v. *Powers*, 56 N. Y., 31.)

It is difficult to see how the addition of the seals altered, in any material respect, the obligation of the town, and unless the legal effect of the obligations were changed, the alteration (if it be such) was an immaterial one. (*Casoni* v. *Jerome*, 58 N. Y., 318; *Waugh* v. *Bussell*, 5 Taunt., 707; *People* v. *Muzzy*, 1 Denio, 239; *Kinney* v. *Schmitt*, 12 Hun, 521.) Again, when the maker of a negotiable instrument puts it forth in a condition so that an alteration can be made without defacing it or exciting the suspicions of a prudent man, the maker is estopped from urging the alteration as a defense as against a *bona fide* holder. (*Redlich* v. *Doll*, 54 N. Y., 234; 2 Daniels on Neg. Inst., 377.) These obligations were put forth in a condition which permitted the seals to be affixed without affording the slightest ground for suspicion on the part of the most prudent purchaser that they were not in the same condition as when issued. The fact that the bonds become due within less than thirty years from the date of their delivery is not a sufficient reason for their cancellation. The bonds are dated September 1, 1870, and are payable thirty years from their date, with semi-annual interest, as prescribed by the statute. The road at this time was in process of construction. By chapter 507, Laws 1870, the commissioners were authorized to deliver the bonds from time to time as might be agreed upon between them and the railroad company. It was not intended that the bonds should be dated at the time of their delivery.

Such a construction would require the bonds to be payable at different dates. *Potter* v. *Greenwich* (26 Hun, 326; affirmed, 92 N. Y., 662), is not in point. In that case the bonds were payable on their face twenty years from date. The action was by the holder to compel a reformation of the bonds, upon the ground that there was a mutual mistake, and it was held that there was no mistake. The fact that the bonds in suit are substitutes for prior bonds to a like amount, and were substituted for the reason and in the manner described in the statement of facts, is not a ground for their cancellation. Even though the bonds could not for this reason be enforced in an action at law the town would have no right to compel their surrender. The town had created a debt which it is bound to pay, and it cannot, without tendering payment, compel the holders of the evidences of its indebtedness to surrender them for cancellation though irregularly issued.

The four questions last discussed relate merely to defects, if they are such, in the mode in which the commissioners issued the evidences of the indebtedness of the town, not to the power of the town to create the debt or of the liability of the town for its payment. For seven successive years, from 1871 to 1877 inclusive, the commissioners reported the amount of the bonds issued, the purpose for which issued, and asked the board of supervisors to levy and collect an amount sufficient to pay the interest on the indebtedness. For five successive years, from 1873 to 1877 inclusive, the supervisor of the town made a like report to and request of the board of supervisors. The supervisor is certainly an officer of the town. During these seven years every tax-payer and every officer of this town knew that the bonds were outstanding and that taxes were collected for the payment of the interest, but they took no steps to review the determination of the county judge and permitted innocent purchasers to become the owners of the bonds. By this action and inaction the town is estopped from requiring the bonds to be surrendered for the alleged defects in the mode in which they were issued by the commissioners.

The judgment of the Special Term is reversed and a new trial ordered, with costs to abide the event.

BOARDMAN, J., concurred.

HARDIN, J. :

I am not prepared to concur in the opinion of brother FOLLETT so far as it discusses the application of the doctrine of estoppel, but in other respects I assent to the opinion and concur in a reversal of the judgment.

Judgment reversed and new trial ordered, costs to abide the event.