By the Court,

Cowen, J.
The testimony in reference to the admissions of the defendant to the deputy sheriff, was inadmissible. He was not able to say that he had been authorized by the defendant to use the language alleged to have been contained in the letter; nor was the letter produced to refresh his recollection. There was only one of two ways in which he could be allowed to speak; that is, either from positivé recollection, or from seeing the letter and knowing it to be his own statement. It might then have been treated as his memorandum, and according to some authorities, might have been received as an original entry; but even in such case, if hé could not remember the transaction, he must have been clear that he would not have so stated it, unless true at the time. This is the farthest that any cases have gone (2 Mann. & Ryl. 5, 7; 2 Nott & McCord, 334; Peck. 108, 9,118). The inquiry hero was no more than the common one to a witness; would you have asserted such a matter unless it had been true? and on obtaining the witness’s affirmative answer, going on to prove what he did say. Such an inquiry is never allowed on an examination in chief, to establish a fact. The evidence of the deputy sheriff was therefore inadmissible. The evidence was satisfactory as to the defendant’s mistake in drawing the note, and that he intended it for 334. But I do not see any considerable evidence, if the deputy sheriff’s is stricken out, to warrant the inference that the defendant had authorized the alteration. The testimony of the deputy sheriff, *138 if admissible, tended to prove not only an express authority to alter the note, but to fortify the proof of the mistake, and the amount of the original demand. It was quite material, but being inadmissible, it seems to call for set-[241] ting aside the report. The defendant struck the balance at within a few cents of §334. He drew the note with his own hand, placing the §334 in the margin, but in the body of the note inserted only §300. This alone was enough to warrant the referees in finding, as they expressly did, that the defendant intended to make a note corresponding with the balance; and on this point the report might well be maintained, could we see that the evidence of the deputy had no influence. That we can not say. Had it been out of the way, the referees might have come to a different conclusion as to the mistake; for all the other testimony is but circumstantial.
But if the finding on the mistake were maintainable, had the plaintiffs a right to rectify the note without any express authority beyond that ? Had a naked blank been left for the sum, this court, in Boyd v. Brotherson (10 Wendell, 93),went quite far enough to sustain the alterd note as a genuine one. In that case, the creditor, whose debt was to be secured, took the note without any sum being inserted, and he and the maker filled the blank with the sum intended by the endorser, without his assent to the alteration; and held well. In Jacob v. Hart (6 Maule & Selw. 142), the date was mistaken. It was rectified by the payee, at first, without the acceptor’s assent; but he afterwards said, “that was right;” held well. The alteration postponed the time of payment one month. And in Brutt v. Picard (Ryl. & Mood. N. P. Cas. 37), a like alteration was allowed without any express consent, either of drawer or drawee. The date was by mistake in 1822, instead of 1823. But the cases allowing an alteration of express words, without the authority of the party to be affected, even to correct a mistake, are very scant, while they are quite numerous that a mere omission may be supplied. No distinction however, appears to be expressly established by the cases. Mr. Chitty seems to consider them all as standing on the same principle, and that those cases which authorize the ex parte filling up of a mistaken blank, equally authorize the correction of any plain mistake in the same way. (Chitty on Bills, ed. of 1836, p. 206, 207). Both are certainly carrying out the original [242] intent of the parties. Either set of cases must be maintained, if at all, on that ground. And in Kershaw v. Cox (3 Esp. R. 245), which was a mistaken omission of the words “ or order,” in a bill endorsed by the defendant, Le Blanch, J. put it to the jury, on very slight circumstances, to infer the assent of the defendant, who was the endorser, that the omitted words should be inserí ed. They had certainly been put into the bill without the defendant’s previous assent. And see per Parsons, C. J. in Hunt v. Adams (6 Mass. R. 522).
If the plaintiffs had no right to correct the mistake, the alteration avoided the note, and put that out of the question. Then, were the plaintiffs remitted to. the original consideration? The late case of Atkinson v. Hawdon (2 Adolph. & Ellis, 628), holds that they were; and that they might recover upon tho account stated. It is supposed that this court held about the same time that they were not, in Blake v. Noland (12 Wendell, 173). In that case, the plaintiff had destroyed the note willfully, and apparently' without any honest motive, and ' I do not see in the case, any considerable evidence of the original consideration, which was work and labor, independent of the note, and what was said when it was given. The case left much room to believe that the act was done fraudulently. In Atkinson v. Hawdon, the question arose upon pleading, and for aught that appeared, the alteration was made under an honest mistake of right. Perhaps that distinction should be adopted. It would be quite revolting to allow the plaintiff willfully and fraudulently to destroy the note and remit himself, and then use it as evidence of the original *139 consideration; while an honest mistake, where it is obviously so, should not prejudice. To allow a holder the privilege of destroying his note and thus bringing himself to the original consideration, would put it in his power to acquire an advantage by wrongful suppression of testimony. The note is evidence of the true balance. The same remark would apply to any fraudulent, or, if you please, any unexplained alteration which avoids the note. It then ceases to be evidence for any purpose (Chitty, 212, a. ed. 1836). But there are certainly many alterations, ex parte, which have been holden innocent, and even available. One, as we have seen, is the filling up [243] a blank with a sum intended by the endorser; another may be the insertion of a name; another, the insertion of words of negotiability (Chit, on Bills, ed. 1836, p. 206), with other cases of the like character. Suppose in this case, the plaintiffs really believed the defendant intended the sum which was inserted, but the referees should differ from them, and think the original sum was intended; the alteration would'then stand upon a mistake of the fact. It would be very severe to say that the original debt should be forfeited. Ch. Justice Nelson observed, in Blade v. Noland, “The proof is, that the plaintiffs deliberately and voluntarily destroyed the note before it fell due; and there is nothing in the case accounting for, or affording any explanation of the act, consistent with an honest or justifiable purpose. Such explanation the plaintiff was bound to give affirmatively.”
But in any view, it seems difficult to maintain this report so long as the deputy sheriff’s evidence is in the case. The referees, in the absence of that might have thought differently as to the original balance. That testimony seems to affect every point found by the referees. Acting independent of that, and finding the original debt as it appeared to have been made out by the defendant himself; finding also that he intended to give his note for that debt, but did not by mistake, or that the plaintiffs honestly believed in such intent and mistake from the appearances, and made the alteration on a supposed authority, though none in truth existed in point of fact, I can hardly say' they are to be deprived of all remedy.
Report set aside.