## SMITH v. MACE.

Where a vendor fraudulently altered a promissory note, given for the price of the property sold;—*Held*, that he could not resort to the original consideration, whether the note was received strictly as payment or not.

IN ASSUMPSIT, the plaintiff, Charles C. Smith, claimed to recover $700, being the balance unpaid for three tracts of land in Clarksville, alleged to be sold by the plaintiff to the defendants, Joseph Mace, jr., and Daniel S. Mace, and conveyed on the 10th of January, 1856, to Joseph Mace, jr., at the price of $2,000. The defendant pleaded the general issue.

In the fall of 1855 Joseph Mace, jr., proposed to purchase of the plaintiff his farm and mills in Clarksville. The plaintiff offered to take $2,000 cash down, and at his request gave him a fortnight to consider the offer. October 25, Joseph Mace, jr., wrote to the plaintiff that he could not raise more than $1,000 or $1,200, and he would give his note for the balance ; that his brother Daniel thought he would go in shares with him, if he could make a trade. Objection was made to the admission of this letter to affect Daniel ; but it was admitted, and the defendants excepted. About the first of January, 1856, Joseph was at Clarksville, and a bargain was closed. Joseph had obtained only $1,000, and desired credit for the rest, and the bargain was made on that condition. Joseph said, as the plaintiff testified, that his brother was to have half, and he thought it would save expense of a deed to Daniel to make the deed to both. The deed was so made, and $1,000 were paid, and notes given for the balance, which appeared to be two for $150 each, payable in one year; one of $300, in three years, and one of $400, in five years. These notes were signed by Joseph Mace, jr., only. He said his brother was not of age, but he would sign and pay ; it would make no difference.

Joseph Mace, jr., stated this conversation differently. He testified : I told Smith I had had a talk of my brother having part, and it would save expense of a deed to Daniel to have the deed made to both. He said it made no difference to him ; he should look to me for pay. I told him I would give my notes, and he might look to me for pay. Nothing was said of Daniel being liable.

Possession of the property was given to Joseph, and the plaintiff removed to Pittsfield. In March following Joseph and Daniel came to the plaintiff's residence in Pittsfield, and paid the two notes of $150 each, and the interest. The evidence was conflicting as to the point whether the whole was paid by Joseph, or whether Joseph and Daniel each paid about one half of the amount. While there the plaintiff and the two defendants had conversation upon the subject of the purchase, but the plaintiff was unable to testify what was said by each of the defendants; and objection was made to proof of the substance of the conversation while both were present; but the evidence was admitted, and the defendants excepted. The plaintiff testified that he spoke of Daniel's signing the notes, but both the defendants replied that he was not of age, but they would

pay them. Daniel would pay as readily as if he was of age, and the plaintiff let the notes remain as they were. The defendants denied that there was any such conversation there, and Joseph denied that there was any conversation as to Daniel's signing or paying the notes, when they were made.

It was contended for the plaintiff that the purchase was made by Joseph on the joint account of Joseph and Daniel, and that they were jointly liable for the price; and though the notes were signed by Joseph alone, on account of the minority of Daniel, they were not to be regarded as payment unless it was so agreed.

The notes for $300 and $400 were payable with interest annually. Joseph testified that he never saw the word "annually" upon the notes, though he read them carefully; and it was contended by the defendants that they had been fraudulently altered by the insertion of that word. The plaintiff testified that the notes had not been altered, and there was no other evidence upon the subject.

It appeared that after Daniel Mace arrived of age, in January, 1857, he conveyed to Joseph Mace, jr., one undivided half of the property conveyed to them by the plaintiff, for the consideration of $1,500, as stated in the deed. To the admission of this deed the defendants objected, and on its admission excepted. Daniel subsequently took from Joseph a deed of mortgage of the whole property, conditioned to pay a note of $1,000 of the same date as his deed to Joseph, and other notes, amounting to $500, which deeds were read in evidence.

The plaintiff proposed to examine Joseph, and afterwards Daniel, as to their dealings with each other, and as to the notes described in said mortgage. Their counsel objected to their being examined upon that subject, on the ground that they were protected by the statute from disclosing their title to any property the title of which was not material to the trial of the action. But the court declined to interfere on the motion of counsel, as it did not appear to the court that the answers to the questions would disclose or affect the witness's title to any property; and the defendants excepted. Subsequently Daniel declined to answer certain questions, on the ground that the answers might disclose his title to property not material to the case on trial; and he was not required to answer.

The court charged the jury that the promissory notes given by Joseph to the plaintiff, for the balance unpaid of the purchase money at the time of the sale, were not *primâ facie* evidence of payment; and unless it was shown by the evidence, or was fairly to be inferred from the circumstances of the case, that they were agreed to be accepted as payment, the balance of the original debt for the property still remained unpaid, and might be recovered from the two defendants, if they were originally liable, or if Daniel, after he became of age, had ratified and confirmed the bargain, if any, made by Joseph during his minority on their joint account; that if Daniel, after he was of age, for a valuable consideration, paid him for it, sold and conveyed the land, or his interest in the premises conveyed to him and Joseph by the plaintiff, that would be a ratification of the plaintiff's sale to him, and would render him

jointly liable with Joseph for the unpaid balance of the purchase money, if they found the purchase made by Joseph on their joint accounts.

The court directed the jury that if they should find that the word "annually" was wrongfully and fraudulently inserted in the two notes, the amount of which is now in suit, though the notes against Joseph would be thereby made void, yet the debt would not be paid, and the plaintiff might recover the amount of the two defendants.

A demand having been shown for the money, the court instructed the jury that if they found the two defendants chargeable, they might add interest on the amount due from the first demand proved.

They were further instructed that the action could not be maintained to recover the amount of four hundred dollars, for which Joseph had given his note payable in five years, and which had not become payable when this action was brought.

The jury, having retired to consider the case, presently sent to the court a note as follows:

"Does the note given by Joseph Mace, jr., to Daniel S. Mace place Daniel S. Mace in the same position as it would if he had received the money instead of the note; said note being given at the time that Daniel S. Mace quitclaimed his right in the Clarksville property to Joseph Mace, jr. ?"   To which inquiry the judge answered on the same paper as follows: "It is for the jury to consider whether receiving security for the money, if they find that fact, would not be equal evidence of ratification, as the receipt of the money."   To this instruction the defendants excepted.

By consent of parties the jury were directed, if they agreed on a verdict after the court adjourned, to seal up their verdict, and bring the same into court the next morning.   At the opening of the court the foreman, in answer to the usual inquiry, said they had agreed on a verdict, and on opening the envelope the following writing was found inclosed:

"EXETER, January 23, 1862.
SUPREME JUDICIAL COURT,

Case No. 109.   Charles C. Smith v. Joseph Mace, jr., and trustee. Verdict for the plaintiff, and interest from the time the demand first made at Epping."

It was not signed by the foreman.

The counsel for the plaintiff, in the hearing of the jury, said he understood the jury intended to find damages for $300 and interest on it, and desired the jury might be sent out to cast the interest. And the jury, without the consent of the defendants, and without objection, the senior counsel not being present, were sent out to cast the interest on the amount they found due, and to return the amount of principal and interest in one sum in their verdict.   The jury retired and brought in their verdict in usual form for $367.90, signed by the foreman.   To these proceedings, and to the verdict thus returned, the defendants excepted.

The defendants moved that the verdict might be set aside by reason of said exceptions, and the questions arising in the case were reserved for decision at the law term.

*J. W. Towle*, for the defendants.

The verdict should be set aside and a new trial granted:

1. Because the letter from Joseph Mace, jr., October 25, 1855, to the plaintiff was improperly admitted in evidence. It does not appear that it was written with the knowledge or consent of Daniel, and his rights should not be prejudiced thereby. It is not evidence that Daniel was a joint purchaser.

2. Because the plaintiff was allowed to testify as to the substance merely of the conversation of the defendants at Pittsfield, without being able to testify to the individual conversation of either, especially as Daniel denied he had any conversation whatever.

3. The deed from Daniel to Joseph in 1857 should not have been admitted. There is no evidence to connect the transfer between the defendants with the original purchase from the plaintiff. It was not a part of the *res gestæ*, and is consistent with the fact of Daniel's being a purchaser under Joseph. His rights should not be jeopardized by the introduction of documentary evidence in no way connected with the original transaction with the plaintiff. The same reasoning may be applied to the mortgage deed and notes from Joseph to Daniel.

4. Because the court allowed the plaintiff to examine the defendants as to their dealings with each other, and as to the notes described in said mortgage, when their counsel claimed their exemption under Pamphlet Laws, ch. 2090, sec. 1. The court could not judge what their answers might disclose, or how they might affect their title to property.

5. Because the instructions given by the court relative to the alteration of the two notes (the insertion of the word "annually"), were erroneous. The notes, becoming void by reason of the false and fraudulent alteration, can not become the foundation of a recovery in any form of action. The original legal evidence of the debt having been destroyed, no agreement or liability between the parties can be proved by evidence, *aliunde.* See *Martendale* v. *Follet*, 1 N. H. 95, and cases there cited, where this doctrine is fully discussed.

6. Because the jury separated and dispersed without having agreed upon a verdict. The writing returned by the foreman is not one from which the finding of the matter in issue may be concluded. It did not contain the names of the parties; did not specify any damages, nor at what date a demand was made, and from which interest was to be added, and was not verified by the signature of the foreman. It contained none of the properties which constitute a verdict. It was no better than a blank piece of paper. The verdict on file was made up after the jury heard the suggestion from the plaintiff's counsel, and after they had separated for several hours, and should be set aside. *Allen* v. *Aldrich*, 29 N. H. 63, and cases there cited.

*Hatch* and *Collins* (with whom was *Christie*), for the plaintiff.

1. The letter of October 25 was admissible as evidence tending to show an agreement between Daniel and Joseph to become joint purchasers of the land; also it was admissible as a part of the *res gestœ.* 1 Greenl. Ev., sec. 108; *Newman* v. *Bean*, 21 N. H. 99. This evidence was introductory merely to the main transaction; — the giving of the deed; and is necessary to explain it. It does not alter the case as it would appear without the letter, unless it be in favor of the defendant, by showing that the proposal for the deed to both the defendants came from Joseph and from Daniel.

2. Any statements made by Joseph, in the presence of Daniel, relative to Daniel's not being of age, but would pay just as readily as if he was of age, would bind Daniel, unless he then refused to be bound by them. *Whipple* v. *Stevens*, 20 N. H. 228; 1 Greenl. Ev., sec. 197. It is every day's practice to permit a witness to state the substance of a conversation, when he can not repeat the precise words.

3. The deed of Daniel to Joseph, made in January, 1857, was admissible to show a ratification of the contract by Daniel after he became of age, and was offered for that precise purpose. *Robbins* v. *Eaton*, 10 N. H. 562; *Hubbard* v. *Cummings*, 1 Greenl. 11. The mortgage was admissible as tending to show, by the note of $1,000, described in its condition, of the same date as the deed of Daniel to Joseph, a full and adequate consideration paid by Joseph to Daniel for his half of the land.

4. The plaintiff ought to have been permitted to examine Joseph and Daniel as to their dealings with each other relative to this purchase; also as to the notes described in the mortgage. If they were not bound to answer, the privilege was their own, and the counsel could not make the objection. 1 Greenl. Ev., sec. 451. The exception taken in the defendants' brief to the examination that was had is not well founded in fact. The case shows that it did not appear to the court that the answers of the defendants would affect their title to any property.

5. The promissory notes given by Joseph to the plaintiff were not payment, nor *primâ facie* evidence of payment. *Clark* v. *Draper*, 19 N. H. 419; *Johnson* v. *Cleaves*, 15 N. H. 333; *Jaffrey* v. *Cornish*, 10 N. H. 505; *Page* v. *Hubbard*, Sprague's Dec. 335.

The court correctly instructed the jury that though the word "annually" might have been wrongfully and fraudulently inserted in the two notes, the notes against Joseph would thereby be void, yet the plaintiff might recover the amount of the defendants, if they were originally liable. *Atkinson* v. *Hawdon*, 2 Ad. & El. 627 (29 E. C. L. 293); *Sutton* v. *Toomer*, 7 B. & Cr. 416 (14 E. C. L. 190). The notes in the case at bar were not declared upon, and were not required to show the contract of the parties. The case of *Martendale* v. *Follett*, 1 N. H. 95, is not applicable to this case. If the plaintiff had been shown to be guilty of forging a letter, or any other piece of evidence in the cause, that would not have affected his general right to recover. But the ruling was unnecessary and immaterial. There was no evidence that could have justified a

jury in finding that the note was altered, and a verdict to that effect must have been set aside as against evidence.

6. The proceedings in regard to the verdict were proper. *Clough* v. *Clough,* 26 N. H. 24; *Blackley* v. *Shelden,* 7 Johns. 32; *Hobert* v. *Haggart,* 3 Fairf. 67; *Ropes* v. *Barker,* 4 Pick. 242; *Bolester* v. *Cummings,* 6 Greenl. 85; *Goodwin* v. *Appleton,* 22 Me. 453; *Pritchard* v. *Hennessey,* 1 Gray 294; *Chapman* v. *Coffin,* 13 Gray 454.

BELLOWS, J. The principal question in this case arises upon the instructions to the jury, that although the notes given for the price of the land would be rendered void by fraudulent alteration, yet the debt would still remain, and the plaintiff might recover upon the general count.

The ground taken by the plaintiff is, that the notes were not payment of the price, unless so agreed by the parties, and that upon the production of the notes at the trial, or proof of their loss or destruction, the plaintiff might recover upon the original consideration. Assuming that the notes were to be regarded strictly as collateral security, the position of the plaintiff might, perhaps, be tenable; but we think they are not to be so regarded, but rather as payment, upon condition that the notes are productive at maturity; and in the mean time suspending the vendor's right of action; therefore in case the notes of a third person are received for the price of the property sold, the vendor is bound to use due diligence to charge such third person, or his laches will operate to discharge the original contract; and the fact that no recovery can be had without producing or accounting for the note received, is inconsistent with the position that it is held in such cases strictly as collateral security. So also the discharge of the notes by a release would discharge also the original contract; and we think that the same effect would be produced by such a fraudulent alteration of the notes by the vendor as would render them void.

In the case of such an alteration the policy of the law makes the note wholly void, upon the ground stated in *Masten* v. *Miller,* 4 D. & E. 345, that "a man shall not take the chance of committing a fraud, and, when that fraud is detected, recover on the instrument as originally made." This sound and salutary principle, based as it is upon high moral considerations, and long and well established in both the English and American courts, would be rendered entirely inert in respect to the original promisee, if, when detected in the fraudulent alteration of the written promise, he might recover, upon a promise implied by law, the amount of the original obligation. It would in fact be changed into a mere technical objection to the form of the action, which is utterly inconsistent with the policy which dictated it.

These views are fully sustained by the well considered case of *Martendale* v. *Follet,* 1 N. H. 95, which is often cited, and, so far as we have observed, never questioned. The same doctrine is fully recognized in *Wheelock* v. *Freeman,* 13 Pick. 164. In both these cases notes were given for the price of property sold, and payable, the former in merchantable neat stock, and the latter in stock in

one year, or money in two. In both, the alterations affected the mode of payment, and in both it was decided that no recovery could be had upon the original consideration.

In *Arrison* v. *Hamstead*, 2 Penn. St. 101, there was a deed of land, reserving rent, and after the delivery, it being in the hands of the scrivener, it was altered by the grantor;—*Held*, in an action for the rent, with counts for use and occupation, &c., that the plaintiff could not recover, either on the deed or for use and occupation; for, although the land passed by the deed, the estate of the grantor was destroyed, as a penalty for the fraud in making the alteration. The case is well considered, and the court say: "If a bond, note, or other instrument for the payment of money, be altered, and thereby avoided by the obligor, it has never been suffered, or even attempted to recover on the original contract; as, for example, for money lent. It is a mistake to suppose the evidence of title only is avoided. The whole contract becomes void, and it is held, as a principle of policy, that the fraudulent party may lose, but can gain nothing by his fraud." See, also, *Miller* v. *Gillieland*, 9 Penn. St. 119.

In *White* v. *Huss*, 32 Ala. 430, it is laid down that although a promissory note, not under seal, may not be a merger of the contract for which it was given, yet the payee can not recover on the original consideration, when his recovery on the note is defeated by proof of material alteration by him, without the assent of the maker, which renders the note void. The court say, "as the note was at first valid, there can be no recovery on the contract unless the note still continues valid, and is produced in evidence, or proved to have been lost by time or accident; and to allow the payee, after he had designedly made a material alteration in the note, without the assent of the maker, to recover upon the contract for which the note was given, would be to depart from the sound and just principle that no one shall be permitted to take the chance of committing a fraud without running any risk by the event, when it is detected."

In *Whittier* v. *Frye*, 10 Mo. 348, it was held, that where a party by his own act alters an instrument, so that it can not be the foundation of any legal remedy, he will not be permitted to prove the covenant, or promise contained in it, by any other evidence; and that this principle will prevent a resort to the common counts in order to sustain the plaintiff's right of recovery. This case is cited by counsel in *White* v. *Huss*, 32 Ala. 430, and was a case of a sealed instrument, but no stress was put upon that. See, also, 1 Greenl. Ev., sec. 568, and note 4; *Newell* v. *Maybury*, 3 Leigh 250; *Mills* v. *Starr*, 2 Bailey 359, cited in 2 Smith's L. C. (5th Am. ed.), 961.

So it is held that where a note, given at the time when the liability occurs, is usurious, and therefore void by the New-York law, no recovery can be had upon a general count for the sum justly due, for the whole transaction is infected; and yet the money justly due is good consideration for a subsequent express promise; but the law will raise no promise by implication. *Rice* v. *Welling*, 5

Wend. 595; *Early* v. *Mahone*, 19 Johns. 147; *Hammond* v. *Hopkin*, 13 Wend. 505.

In *Blake* v. *Noland*, 12 Wend. 173, the suit was upon a note, destroyed or lost, and for the work and labor of which the note was given; and it was held that proof that the note was voluntarily and deliberately burnt will not authorize the secondary proof of its contents, or entitle the plaintiff to resort to the original consideration. *Clute* v. *Small*, 17 Wend. 238, takes a distinction between an innocent alteration, though unauthorized, and a fraudulent alteration. The court, *Cowen*, J., says: "To allow a holder the privilege of destroying his note and thus bringing himself to the original consideration, would put it in his power to acquire an advantage by a wrongful suppression of testimony;" and he says of *Atkinson* v. *Randon*, 2 Ad. & El. 628, that the question arose upon pleading, and for aught that appeared the alteration was made under an honest mistake of right, and he says perhaps this distinction should be adopted.

To the point that although, technically speaking, such note is not regarded as an extinguishment of an antecedent debt, yet is treated as payment *sub modo ;* or a payment on condition that the note prove to be productive, are the cases of *Angel* v. *Felton*, 8 Johns. 149; *Burdick* v. *Green*, 15 Johns. 247; *Ward* v. *Evans*, 1 Ld. Raym. 928.

To entitle the vendor, then, to maintain a suit on the original promise, or for money had and received, the note must be produced and canceled at the trial, or otherwise accounted for; and regularly it should appear that the note, when so produced, still continues valid, and not discharged or avoided. Such is the doctrine distinctly of *Martendale* v. *Follett*, and also of *White* v. *Huss*, 32 Ala. 430. If fraudulently altered by the vendor its identity is destroyed, and he shall not be permitted to explain it by showing his own turpitude. The vendor therefore has lost the power to produce the note; and by his own fraudulent act designed to injure the vendee or debtor; and he can not, consistently with sound public policy, be permitted to recover on the original consideration, and thus, by merely changing the form of action, avoid the consequences of his crime. The rule which seeks to punish the offender by destroying the claim which is thus tampered with, has no such formal or technical foundation, but stands upon the broad foundations of public policy, which treats such an act as a virtual discharge of the debt, as much as if it had been released.

We are aware that it is laid down (in Chit. on Bills 184), that in such cases the party may resort to the original promise, although it is said (on page 598) that where a party is discharged by the alteration of the bill, or the laches of the holder, the plaintiff can not resort to the general counts.

The authority upon which Mr. Chitty relies for the position that he can not resort to the general counts, is *Atkinson* v. *Randon*, 2 Ad. & El. 628; but it appears upon examination that a fraudulent alteration was not alleged in the pleading; furnishing ground for the distinction suggested by *Cowen*, J., in *Clute* v. *Small*, 17 Wend. 238, before adverted to. The decision, moreover, was simply an-

nounced by the court, and no reasons for it assigned. On the other hand, in *Powell* v. *Divett*, 15 East 29, it was held that a material alteration in a sale note avoids it, and that no action could be maintained on the contract evidenced by it.

Reference has also been made to the case of alterations of bills and notes without a new stamp, but it will be seen at once that this class of cases is not in point, inasmuch as the alteration is not fraudulent; but, although made with the consent of both parties, is rendered void by positive statute.

The other exceptions are all overruled, but, for errors in the instructions adverted to, there must be

*A new trial.*