## Dennis H. Hayes v. J. G. Wagner.

1. ALTERATION OF WRITTEN INSTRUMENTS—*Effects of.*—The general rule is well established that if a party to a written executory contract, makes alterations in any material portion of it, he will be precluded from using it as evidence to enforce its provisions against another party to it who has not consented to such alterations.

2. SAME—*Restoration of Altered Instruments of no Avail.*—The unauthorized material alteration of a written instrument by the holder, or with his consent, vitiates it as to non-consenting parties. The policy of the law is to preserve the integrity of legal instruments by taking away the temptation of tampering with them, and the restoration of an instrument after such alteration, to its original condition, will not avail to give it force.

3. SAME—*Where the Alteration is Not Made with Fraudulent Intent.*—Where the alteration of a written instrument is made without the knowledge of the plaintiff or without any fraudulent intent on his part, although it is such as to destroy the instrument as evidence, this court is unable to perceive any good reason why such alteration should cancel a debt of which the instrument was merely evidence.

4. SAME—*Consequences of a Fraudulent Alteration.*—A material alteration of an instrument fraudulently made by its holder justly deprives the wrong-doer of all rights by virtue of it. The identity of the instrument is thereby destroyed and the court will not assist persons who have been guilty of a fraud to carry out the transaction wherein it was perpetrated.

5. PRACTICE—*Amendments upon Discontinuing as to a Part of the*

*Defendants.*—It is the better practice to amend the pleadings upon discontinuing an action as to a part of the defendants, and where an appeal is taken and the judgment is reversed and remanded, this may be done before another trial is had.

6. INSTRUCTIONS—*Assuming the Existence of Disputed Matters.*—An instruction which assumes the existence of a disputed matter is erroneous.

**Assumpsit.**—Error to the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Heard in this court at the October term, 1899. Reversed and remanded. Opinion filed June 14, 1900.

**Statement.**—This suit was brought by defendant in error, doing business as the Milwaukee Bridge and Iron Works, against plaintiff in error and three others. The cause was dismissed as to two of the other defendants, N. B. Hayes and J. C. Hayes, and was pending against plaintiff in error and E. W. Wagner when verdict and judgment resulted against plaintiff in error. E. W. Wagner was still a party defendant, but not served with process. The suit was based upon a contract in writing by which it is alleged defendant in error engaged at a fixed price to furnish certain materials and perform certain labor as a sub-contractor for plaintiff in error, who, as original contractor, was undertaking the reconstruction of a building for the United States. It is alleged that after entering into the contract plaintiff in error refused to carry it out, and for breach of it this suit was instituted. The damages claimed and recovered were measured by the difference between the contract price agreed to be paid by plaintiff in error and the cost of furnishing the materials and doing the work which would have been incurred by defendant in error if permitted to fulfill the engagement. The contract sued upon was executed by defendant in error through one R. G. Wagner, as manager, and by E. W. Wagner, in the name of D. H. Hayes & Co. It is claimed by defendant in error that the firm of D. H. Hayes & Co. consisted of plaintiff in error and E. W. Wagner. Plaintiff in error contends that E. W. Wagner was not a copartner and did not have any authority to execute a contract for him. This presents one of the

controversies of fact in the case. It is also contended by
defendant in error that at the time of the execution of the
contract by E. W. Wagner in the name of D. H. Hays &
Co., that plaintiff in error was present and in express terms
stated that E. W. Wagner was his copartner and had
authority to thus sign the contract, and that thereby plaint-
iff in error is now precluded from denying the copartner-
ship so far as this contract is concerned. It is denied by
plaintiff in error that he ever thus held E. W. Wagner out
as a copartner, or as one having authority to sign contracts
for him. A fact of controlling importance is presented in
certain alterations of the written contract, which were
made by R. G. Wagner, defendant's manager, several weeks
after its alleged execution and delivery. These alterations
are of matters material to the contract. It is contended by
defendant in error that the alterations were made in con-
templation of making a new and different contract, and by
way of memoranda for such new contract. At one time in
his testimony R. G. Wagner indicates that the changes were
made without any consent to them as the basis of a new
contract by E. W. Wagner, who was present. At another
time in his testimony R. G. Wagner states that E. W.
Wagner did accept the modifications, and that it was only
after his assent thereto that the changes were made upon
the contract in question. E. W. Wagner was not a witness
at the trial, and the history of the making of the altera-
tions rests alone upon the version of it given by defendant
in error's manager and one Sangdahl. The latter testified
that E. W. Wagner was to submit the proposed changes as
to dates to plaintiff in error.

The contract as altered is as follows, the interlineations
and changes appearing upon the typewritten wording of
the contract :

" Contract.

This contract made this 28th day of October, by and
between D. H. Hayes and Company, parties of the first
part, and Milwaukee Bridge and Iron Works, J. G. Wag-
ner, Proprietor, party of the second part.

Witnesseth : That the party of the second part, for and

in consideration of the sum of fifty-two thousand ($54,700) dollars to be paid him by the parties of the first part, do hereby agree to furnish and erect all structural iron, cast and ornamental iron, including all field riveting, drilling, etc., for the U. S. Appraisers Warehouse in New York, N. Y., according to plans and specifications prepared by the Supervising Architect of the Treasury. Payments to be made by the parties of the first part, in monthly estimates allowed by the government, to be made within thirty days, and acceptance by the U. S. Government of this contract to be completed by the 20th day of May, 1897.

All stair work, ceiling, framing, anchors and cast iron bases to be in place on or before the 20th day of April, 1897.

All re-enforcing and structural work of first floor to be complete on or before the 10th day of March, 1897; and second and third floors by April 1st.

For each and every day the party of the second part shall be delayed in gaining possession of the building after the 15th day of January, 1897, of the basement, first floor, second floor and third floor, and the 15th day of February, for the balance of the building, they shall be given one additional day for each and every day delayed.

The party of the second part further agrees to pay the parties of the first part $400 per day for each and every day exceeding above dates for completion of their contract as liquidated damages, providing the U. S. Government charges said parties of the first part the above amount for such delay.

In Witness Whereof we have this day set our hands and seals this 30th day of October, 1896, according to the above contract and conditions.

It is further understood and agreed, that the above contract is contingent upon said D. H. Hayes & Co. signing the contract with the U. S. Government.

D. H. Hayes & Co.    [Seal]
Milwaukee Bridge & Iron Works,
J. H. Wagner, Prop.    [Seal]
By R. G. Wagner, Mngr."

The alterations made after the alleged execution and delivery of the contract consist in the change of figures $52,000 to 54,700; the striking out of the words in thirteenth, fourteenth, fifteenth and sixteenth lines; the insertion of words "allowed by the government;" the changing of

words " below third floor" into " of first floor;" the chang-
ing of date " 20th" day of March, 1897, into " 10th" day,
etc.; and the insertion of the words " and of 3rd floor by
April 1st." There is no controversy as to the fact that
these alterations were made by defendant's manager about
one month after it had been signed by defendant in error
and E. W. Wagner.

Just preceding the making of these alterations an agree-
ment had been practically effected between defendant in
error and E. W. Wagner, who, it is claimed, was a partner
of plaintiff in error, to the effect that defendant in error
should do work for plaintiff in error amounting to $2,709,
which work was upon the same building, but not covered by
the original contract. The *narr.* declared on the contract
as originally drawn without the alterations. When the
contract thus altered was proffered in evidence, counsel for
plaintiff in error objected to its admission, stating:

"I object to the introduction of this document in evi-
dence on the ground that it has been since its execution mate-
rially altered, in that its date has been changed and thereby
the date for the performance of the contract had been
changed and extended; and further, in that the contractual
price has been changed from $52,000 to $54,700; and further
that the time or times of payment have been changed and
the forfeiture or liquidated damages for non-fulfillment of
the contract have been changed. Furthermore, that the
time of the completion of the contract has been changed.
For these reasons I submit that this contract is a different
contract sued upon in this action. Furthermore, upon the
alteration of this contract the defendants had the right to
refuse to accept it in its altered condition."

The altered contract was admitted in evidence, and the
recovery was had upon it as the contract declared upon, *i. e.*,
as unaffected by the striking out of some parts and inser-
tion of others. It appears that the contract was executed
in duplicate.

An instruction was given by the court of its own motion,
which is in part, as follows:

"If you believe that such alterations were made by the
plaintiff or by some person duly authorized by the plaintiff,

then you are instructed, as a matter of law, that such alterations were material and changed the nature of said contract; and your verdict must be for the defendant unless you further believe from the evidence that all of said changes and alterations were made by R. G. Wagner, the manager and agent of the plaintiff, in the presence and with the knowledge and consent of the defendant, E. W. Wagner, and further believe that at the time the same were made it was contemplated by the parties that a new contract in writing should be made between the parties for the work mentioned in said alleged contract set forth in the declaration and also additional work, for which an additional price of $2,709 was to be paid, and further believe that the said changes and alterations were all made by said R. G. Wagner as a mere memorandum of matter agreed upon between him and the said E. W. Wagner to be inserted in said proposed and contemplated new contract, and without any purpose or intention on his part of presently changing the legal effect of said contract."

The trial resulted in verdict for $16,500 and judgment thereon, from which this appeal is prosecuted.

John Reid McFee, attorney for plaintiff in error.

If an alteration be not fraudulent, although it cancels the instrument, it will not cancel the debt of which the instrument was evidence; and quotes, in support of this doctrine, Vogel v. Ripper, 34 Ill. 100; 2 Parsons on Cont., 721.

The general rule is that a material alteration of a written instrument made after its execution by the party claiming thereunder or with such party's privity, without the authority or consent of the other party or parties to the writing, invalidates the writing in the hands of the party responsible for the alteration and his assigns, as to all the non-consenting parties, so that no recovery can be had on its executory provisions in either its altered or original form. The one altering the contract will not be permitted to establish the contract by other evidence. 2 Am. & Eng., Enc., 2d Ed., 185; Bish. on Cont., Sec. 746; 2 Minor's Inst., 662; Angle v. N. W. Mut. Life, 92 U. S. 330.

If the alteration is material the question of whether it is or is not prejudicial to the obligor is of no importance. A

material alteration, although it may operate to the benefit of the obligor, avoids the instrument. Greenfield Sav. Bk. v. Stowell, 123 Mass. 206; Citizens National Bk. v. Richmond, 121 Mass. 110; Williams v. Van Tuyl, 2 Ohio St. 337; Huntington v. Finch, 3 Ohio St. 445; Neff v. Horner, 63 Pa. St. 327.

There can be no recovery on the instrument as altered for the further evident reason that the intelligibility of the writing is destroyed by a material alteration. As altered the writing does not set forth the contract of the non-consenting party; and the policy of the rule, so far as it prevents a recovery on the writing before the alteration, is to discountenance the tampering with written instruments. 2 Am. & Eng. Enc. of L., 187 (2 Ed.).

"To prevent and punish such tampering the law does not permit the plaintiff to fall back upon the contract as it was originally. In a stern but wise policy it annuls the instrument as to the party sought to be wronged." Mr. Justice Swayne, in Wood v. Steele, 6 Wall. 80.

"The policy of the general rule of the law that an unauthorized material alteration of a written instrument by the holder or without his consent vitiates it as to non-consenting parties, is to preserve the integrity of legal instruments by taking away the temptation of tampering with them." Wood, J., in Wallace v. Jewell, 21 Ohio St. 163.

Although this doctrine was first applied to sealed instruments, it is by no means confined to such writings, but applies as well to all written instruments. The doctrine is applicable to any simple contract in writing. Boston v. Benson, 12 Cush. 61.

But while the effect of an alteration is to invalidate the instrument, it is not to be understood that such alteration has the effect of divesting the estate which is conveyed by the instrument. This is a doctrine as firmly settled as the original doctrine that the alteration of an executory contract in a material part destroys it. See Pankey v. Mitchell, 1 Ill. 383; Hodge v. Gilman, 20 Ill. 437.

A distinction is made between alterations of written instruments which affect executory contracts and those which

affect contracts executed, such as conveyances of realty. Where a material and unauthorized alteration of a written instrument is made by a party claiming under it, such alteration, so far as it relates to what is executory, destroys the contract, and the contract can not be established by other evidence. But so far as the contract evidenced by the writing has been executed and is ended before the alteration, an alteration, however fraudulent, does not undo what has been done. 2 Am. & Eng. Enc. of L. 197 (2 Ed.).

Thus, conveyances of property are not affected by the alteration. Leasehold estates conveyed by the instrument are not affected. Bliss v. McIntyre, 18 Vt. 466; see King v. Gilson, 32 Ill. 348.

Thus the doctrine arose that although the material alteration of a written instrument made it void, such alteration does not necessarily prevent a recovery by the person entitled thereto on the original consideration. But the right to such recovery is dependent on whether the alteration was innocently made without any intent to defraud, or was made for a fraudulent purpose.

On innocent alterations, see 2 Pars. on Cont. 721; McCormick v. Fitzmorris, 39 Mo. 24; Wood v. Steele, 6 Wall. 80.

Where the alteration was made by consent of all parties the cases establish the doctrine that a new contract thus arose, and the recovery is not on the instrument as it was before altered, but upon the instrument as altered.

In Hochmark v. Richler, 16 Col. 263, the alteration consists of the adding of an additional signature to the note and the recovery was on the instrument as altered.

In Hollis v. Vandergrift, 5 Houst. (Del.), 521, in which the alteration was by adding the words "and Company," the recovery was against the company. Willard v. Clark, 7 Met. 435; Wilson v. Jamieson, 7 Pa. St. 126.

Where a married woman signed a note in the usual form and authorized the payee to add anything which should be necessary to make it legal, the addition of a sentence charging her separate estates does not vitiate the instrument, but

·there the recovery is against the separate estate, or on the contract as altered. Taddiken v. Contrell, 69 N. Y. 597.

So if the holder of a note signed by the principal debtor and sureties by agreement suffers the signature of one of the signers to be erased, the note is still valid as against the principal, the alteration making a new contract on which the recovery is had. People v. Call, 1 Den. (N. Y.) 120.

See also Canon v. Grigsby, 116 Ill. 151; Brock v. Brock, 29 Ill. App. 334; Nelson v. White, 61 Ind. 139; Bowman v. Mitchell, 97 Ind. 155; Myers v. Nell, 84 Pa. St. 369; Gardiner v. Harback, 21 Ill. 129; Knoebel v. Kircher, 33 Ill. 308.

Instruments altered so as to conform with the intention of the parties are nevertheless invalid.

An instrument altered by consent is binding upon the parties consenting in its altered form. 2 Am. & Eng. Enc. of L. 259 (2d Ed.).

It is the general rule that after an instrument has been altered in a material respect, an alteration of it to its original form will not revive its validity. The instrument having been destroyed as a binding obligation upon non-consenting parties, they can not again be bound without their consent. 2 Am. & Eng. Enc. of L., 263 (2d Ed.); Citizens National Bank v. Richmond, 121 Mass. 110; Fulmer v. Seitz, 68 Pa. St. 237.

Where alterations are unnecessarily made, the instrument may not be resuscitated by the restoration of it to its original form. Kountz v. Kennedy, 63 Pa. St. 187.

Whether the alteration is material is a question of law. Miliken v. Merlin, 66 Ill. 13.

It is but repetition to say that one can recover nothing on a contract which he has materially altered, nor can he maintain any affirmative defense thereunder. Bish. on Cont., Sec. 757.

After an alteration the contract is ended, but if it is a deed or lease the title vested in the grantee. An alteration, however fraudulent, does not undo what has thus been done, but no executory contract can be enforced. Bish. on Cont., Sec. 758.

Dennis & Rigby, attorneys for defendant in error.

A mere memorandum is not an alteration, and is immaterial.  Carr v. Welch, 46 Ill. 88, 89; citing Knoles v. Hill, 25 Ill. 288.

An alteration of a written instrument in its technical sense, as applied to the act of a party to the instrument, imports fraud or improper design to change the effect of the instrument.  1 Greenl. Ev., Sec. 566.

And the reason that alterations which do not change the legal effect of the instrument are considered immaterial, is because the law presumes consent.  1 Greenl. Ev., Sec. 567; Hunt v. Adams, 6 Mass. 519, 521–522; Reed v. Kemp, 16 Ill. 445, 448.

And for a similar reason, the charge, on the contrary, even if otherwise immaterial, is held material if actually made with a fraudulent intent.  1 Greenl. Ev., Sec. 568.

It has been held that where the contract is executed in duplicate, an alteration of one part without touching the other part, is immaterial, even though the alteration was made with actual fraudulent intent.  Jones v. Hoard, 59 Ark. 42; 26 S. W. Rep. 193; 43 Am. St. Rep. 17.

An immaterial alteration may be stricken out, and the instrument offered in evidence in its original form.  So, for instance, the case of an accidental cancellation of a written indorsement by a bank, intending to cancel another instrument.  Gordon v. Bank, 144 U. S. 97.

So a cancellation by mistake, on payment by an indorser.  Whitlock v. Mauciet, 10 Ore. 166; Boulware v. Bank, 12 Mo. 542.

So, an unauthorized indorsement, made under honest belief of authority to write it in, may be stricken out.  Nevins v. DeGrand, 15 Mass. 436, 437; Newton v. Bramlett, 55 Ill. App. 661, 663–664; see also Bank v. Ryan, 31 Ill. App. 271.

So also, as to doing an authorized act in an unauthorized manner.  Horst v. Wagner, 43 Ia. 373; Arnold v. Jones, 2 R. I. 345, 357.

And so, also, as to an alteration otherwise material, and

made without the consent of the other party, but under such circumstances that the plaintiff was reasonably under the belief that the defendant had consented. Murray v. Graham, 29 Ia. 520, 524.

MR. PRESIDING JUSTICE SEARS delivered the opinion of the court.

The principal question presented upon this appeal relates to the effect of the alterations made in the instrument sued upon. It is uncontroverted that these changes were made by defendant in error's manager and about a month after the writing was signed by E. W. Wagner and by defendant in error. That the changes were in matters material, is beyond question. The contract price and date of completion were changed. We have then to determine if these changes invalidated the instrument. The general rule is well established that if a party to a written executory contract makes alterations in material portions of it, he is thereby precluded from using it to enforce its provisions against the other party to it who has not consented to such alteration. Gillett v. Sweat, 1 Gil. 475; Gardiner v. Harback, 21 Ill. 129; Kelly v. Trumble, 74 Ill. 428; Burwell v. Orr, 84 Ill. 465; Bishop on Contracts, Sec. 746; Pigot's Case, 11 Coke, 26; Angle v. N. W. Mut. Life Ins. Co., 92 U. S. 330; Hunt v. Gray, 35 N. J. L. 227; Marshall v. Gougler, 10 Serg. & R. 163; Fay v. Smith, 1 Allen, 477; Davidson v. Cooper, 13 M. & W. 342.

In Gardiner v. Harback, *supra*, the court said:

" The law will not tolerate such changes in the evidence the parties have provided of the terms of their contract, and if so made, annexes as a penalty the release of the other party from all obligation under the contract."

It has been held that it is not necessary to show fraudulent intent in making the alterations in order to prevent the use in evidence of an instrument so altered. Marshall v. Gougler, *supra;* Fay v. Smith, *supra.*

And it has been held upon very good authority, that if the alteration in some material respect be made by mistake

Hayes v. Wagner.

of the party holding it, yet the writing is thereby rendered invalid, and relief as against such mistake can only be obtained through a court of equity.    Hunt v. Gray, *supra*.

But the rule does not seem to have been carried to this extent in case of mistake by the Pennsylvania Court in Marshall v. Gougler, *supra*.

The policy of the rule is to prevent the unauthorized changing of the written evidence of contracts, and is enforced strictly against those who violate it.

In Wallace v. Jewell, 21 Ohio St. 163, the court thus announces the rule:

"It is a general rule of law that the unauthorized material alteration of a written instrument by the holder, or with his consent, vitiates it as to non-consenting parties.    The policy of the rule is to preserve the integrity of legal instruments by taking away the temptation of tampering with them."

Restoration of the writing to its original form after such unauthorized material alteration, will not avail to give it force.    Cotton v. Edwards, 32 Ky. (2 Dana) 106; City Bank v. Richmond, 121 Mass. 110; Newell v. Mayberry, 3 Leigh, 250; Wood v. Steel, 6 Wall. 80.

In the case last cited, the court said :

"To prevent and punish such tampering the law does not permit the plaintiff to fall back upon the contract as it was originally.    In pursuance of a stern but wise policy, it annuls the instrument as to the party sought to be wronged."

We are therefore of opinion that the admitted alterations by defendant in error, being in respects which are material, are such as invalidate the writing, if they were made without authority or consent on the part of plaintiff in error.

The Illinois decisions cited by defendant in error's counsel, do not sustain their contention that the rule in Illinois is other than above indicated.    In Knoles v. Hill, 25 Ill. 288, and in Carr v. Welch, 46 Ill. 88, the alleged alterations consisted only in writings upon the paper upon which the instrument was written, and which were held not to constitute any change or alteration whatever in the instrument itself.

In Reed v. Kemp, 16 Ill. 445, and in Ryan v. Buck, 148 Ill. 349, the alterations were held not to be material. In the latter case the court said : " On this record, if the change amounted in law to a material alteration, all the makers were discharged; if immaterial, the obligation of the sureties is in no way changed."

Defendant in error endeavors to avoid the effect of the alterations here in question by the theory that the contract was merely used as a paper upon which to note memoranda for a new contract, which was to take the place of the contract sued upon. With this theory of a memorandum, is the contention that E. W. Wagner, acting for plaintiff in error, as well as himself, consented to the alterations. We are not impressed with any force in the memorandum theory as aiding this recovery nor with the contention that the evidence in this record establishes consent to the alterations. That this instrument, representing large interests, should have been used as a piece of blank paper for the purpose of setting down and preserving memoranda, is scarcely credible, when the inserting of the memoranda is accompanied by a marking out of material parts of the writing. That this use of the instrument is consistent with an intent to preserve it in its original form for the enforcement of the terms and conditions thus obliterated, is difficult to believe. Nor does the testimony of R. G. Wagner, the manager of defendant in error, who made the alterations, conduce to such belief. He testified :

" Whether the contract was added to or not, I would have insisted on the change in the contract as to time. It didn't enter my head that I would have to keep the contract as a matter of protection. When he asked me for this copy, having made memoranda on it, I thought it best to keep it for comparison. The making of the memoranda had nothing further to do with it, except that I could not make a comparison with the other contracts when they came back."

It is apparent, we think, from this evidence, that R. G. Wagner did not regard the instrument which he had altered as of any future consequence except as a reference by which

to measure the accuracy of the new contract which was to be written and executed.  If the instrument was made into a mere memorandum, then in becoming a memorandum of a new contract it ceased to be evidence of the old contract, and it does not sustain the recovery had upon it.  The recovery was not upon the altered terms as the basis of a new engagement, but upon the original terms with the alterations disregarded.  It may be that R. G. Wagner in thus marking out a part of the written agreement and substituting other and different terms, was acting in perfect good faith, and with no intent to do any wrong to plaintiff in error.  But when he so far relied upon the expectancy of obtaining a new contract as to obliterate parts of the old one, he deprived defendant in error of any right to enforce the provisions of the latter by use of the instrument thus altered.  The evidence does not support the contention that E. W. Wagner consented to these changes.  R. G. Wagner very frankly states that E. W. Wagner insisted upon submitting the new terms of the proposed agreement as to time of completion to plaintiff in error.  Sangdahl, the other witness upon this matter, testified to the same effect.  But if the consent of E. W. Wagner had been established, and if it be assumed that he had authority to bind plaintiff in error by such consent, yet it is difficult to see how it could aid this recovery.  The consent must have been either to the alteration and consequent abandonment of the old con tract and a substitution of the new one with its altered terms, in lieu of it, in which event the recovery here upon the abandoned contract could not be maintained, or it was a consent to the mutilation and consequent abandonment of the old contract merely in contemplation of making a new contract, which was never made.  That there was an agreement that the instrument might be thus mutilated, and yet continue to be a valid contract, not in its changed form, but in its original form, is neither credible nor supported by any evidence.

We are of opinion that it was error to permit the jury to base a verdict for defendant in error upon the instrument

thus altered, disregarding the alterations, and giving force to it as in its original form. The question is presented in argument, and doubtless will be raised upon another trial, as to the right of defendant in error to rely upon the unaltered duplicate in the possession of plaintiff in error as a basis of recovery for breach of its conditions, and in spite of the fact of an unauthorized alteration of the duplicate kept by defendant in error, which renders it incompetent.

Many of the authorities by which the rule above considered is established, hold in terms that the unauthorized alteration not only precludes use in evidence of the writing thus altered, but as well that it defeats a recovery upon the contract evidenced by the writing. Upon examination such decisions are found to have been for the most part, if not altogether, in cases where the alteration was with fraudulent intent, or where no other means of establishing the contract were presented save the mutilated writing. When the alteration is not made with fraudulent intent, although it be such as to destroy the writing as evidence, it has been held that the engagement of the parties may be otherwise established and enforced. Vogel v. Pepper, 34 Ill. 100; Atkinson v. Howdom, 2 Ad. & El. 628; Clute v. Small, 17 Wend. 238; Booth v. Powers, 56 N. Y. 22; Merrick v. Boury, 4 Oh. St. 60.

In Vogel v. Pepper, *supra*, the court said:

" There is a conflict of opinion regarding the existence of a right of action on an instrument which has been altered by a stranger; but whatever may be considered as the correct rule in that regard, we are unable to perceive any good reason why such an alteration should cancel a debt, of which the instrument was merely evidence. * * * A material alteration of an instrument fraudulently made by its holder, justly deprives the wrongdoer of all rights by virtue of it. The identity of the instrument is thereby destroyed, and courts will not assist persons who have been guilty of a fraud, to carry out the transaction wherein it was perpetrated. A party who voluntarily and fraudulently destroys the evidence of a debt agreed upon by the parties, ought not to be allowed to supply its place by other evidence."

In Clute v. Small, *supra*, the rule was announced, and in

Booth v. Powers, *supra,* by the same court re-affirmed, that the test by which the right to resort to other proof to enforce a recovery after the claimant has destroyed his own written evidence of the contract, by altering it, should depend upon the intent, whether innocent or fraudulent, in altering the writing.

If in the case here it should be determined that the alterations were made by defendant in error with fraudulent intent, doubtless all his rights under the contract, whether evidenced by the mutilated duplicate introduced in evidence or by the unchanged duplicate held by plaintiff in error, would be lost. But if it be determined that these alterations were made innocently and without any fraudulent intent whatever, then, while the effect of the alterations is to destroy the writing thus changed as evidence upon which to enforce the contract, yet we are of opinion that it would not operate to preclude a recovery based upon other proof, as, for instance, the duplicate held by plaintiff in error. In such case of material and unauthorized alteration by the holder, done without fraudulent intent, it would seem that the requirements of rule have been met when the altered writing is rejected as evidence.

Resort to unchanged duplicates has been permitted in similar cases. Lewis v. Payn, 8 Cowen, 71; Jones v. Hoard, 59 Ark. 42.

And as applied to the executory provisions of leases, executed in duplicate, see 1 Taylor on Landlord & T. (8th Ed.), Sec. 165.

And this resort to a duplicate is sanctioned in one of the cases cited, although the alteration was fraudulent, an extent to which the Illinois decisions would not seem to warrant us in going.

If, therefore, it should be determined by a jury that the engagement here in question was entered into by E. W. Wagner, with authority to thereby bind plaintiff in error; that the alterations made by R. G. Wagner were made without fraudulent intent, and that the contract is established by proof of the unchanged duplicate held by plaintiff in

error, we are of opinion that a recovery might be had for breach.

The measure of damages as announced by the instructions of the trial court is, we think, correct.

That it is the better practice to amend the pleadings upon discontinuing as to certain defendants is beyond question, and this may be done before another trial.

There was a very decided conflict in the evidence as to whether E. W. Wagner was represented to defendant in error's manager as a copartner of plaintiff in error. Therefore the instruction given by the court was erroneous, in that it assumed that E. W. Wagner was a copartner, or was in some way authorized to bind plaintiff in error by his assent.

The propriety of proceeding to judgment against plaintiff in error before E. W. Wagner, his co-defendant, has been reached by process, provided the joint liability of the two is established, is settled by the recent decision of the Supreme Court in Sherburn v. Hyde, 185 Ill. 580.

It is not necessary to consider other questions raised by reason of the conclusion reached.

Because of the error in the instruction noted, and because of the admission of the altered writing as a basis of recovery, the judgment is reversed and the cause is remanded.

Reversed and remanded.